# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

CRAWLEY PETROLEUM CORPORATION,  )
                                               )

                Plaintiff,        )

                                               )

v.                                         )      Case No. CIV-17-1365-SLP

                                               )

GASTAR EXPLORATION, INC.,         )

                                             )

                Defendant.    )

## PLAINTIFF CRAWLEY PETROLEUM CORPORATION'S
## <u>MOTION FOR SUMMARY JUDGMENT, WITH BRIEF IN SUPPORT</u>

Charles L. Puckett, OBA No. 7340
Brian R. Matula, OBA No. 14778
Gum, Puckett & Mackechnie, L.L.P.
105 North Hudson, Suite 900
Oklahoma City, Oklahoma 73102
Telephone:  405.488.1212
Fax:  405.488.1216
Email Address for Service:
clpuckett@gpmlegal.net
brmatula@gpmlegal.net

***Attorneys for Plaintiff,***
***Crawley Petroleum Corporation***

September 7, 2018

# TABLE OF CONTENTS

Material Facts to Which No Genuine Dispute Exists ...................................................... 1-5

Introduction ................................................................................................................... 6

Standard for Summary Judgment................................................................................... 8

Argument ....................................................................................................................... 8

      I       The Oklahoma Corporation Commission lacks authority to force pool the
           interests of Crawley that are subject to the JOA to which Crawley and Gastar are
           parties. ......................................................................................................... 8

      II     The JOA applies to both vertical and horizontal wells. .............................. 14

      III    All of the horizontal well preparations are "developing" the JOA Unit Area;
           therefore, the JOA must control the drilling and operation of the horizontal well
           with respect to interests subject to the JOA ............................................. 14

      IV    This lawsuit is not an impermissible collateral attack on the Pooling
           Argument..................................................................................................... 17

Prayer ....................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 248 (1986)............................................................................ 8

*Kaneb Production Co. v. GHK Exploration Co.,*
    1989 OK 11, 769 P.2d 1388................................................... 10, 17, 18, 19

*Marathon Oil Co. v. Corp. Comm'n of State,*
    1982 OK 19, 651 P.2d 1051, 1054........................................................... 8

*Ward v. Corp Comm'n.,*
    1972 OK 122, 501 P.2d 503, 507 ..................................................... 15, 16

**Statutes**

52 O.S. Supp.1979 § 87.1(e) ...................................................................... 8

52 Okla. Stat. § 87.1 (e): ............................................... 7, 9, 11, 16, 18

52 Okla. Stat. § 87.1 ................................................................................ 15

52 Okla. Stat. § 111 ................................................................................. 17

**Rules**

Fed. R. CIV. P. 56 ....................................................................................... 1

Fed. R. CIV. P. 56(c) ................................................................................. 8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

CRAWLEY PETROLEUM CORPORATION, )
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　Plaintiff,　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　　)　　Case No. CIV-17-1365-SLP
　　　　　　　　　　　　　　　　　　　　　)
GASTAR EXPLORATION, INC.,　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　Defendant.　　　　　)

### PLAINTIFF CRAWLEY PETROLEUM CORPORATION'S
### MOTION FOR SUMMARY JUDGMENT, WITH BRIEF IN SUPPORT

Pursuant to Fed. R. Civ. P. 56, Plaintiff Crawley Petroleum Corporation ("Crawley") moves the Court for summary judgment declaring that the oil and gas industry standard joint operating agreement, to which Crawley and Gastar Exploration, Inc. ("Gastar") are parties, controls, with respect to interests covered by the joint operating agreement, the drilling and operation of a horizontal well drilled in the same spacing unit in which the joint operating agreement is located, and that the forced pooling order covering said spacing unit does not control the drilling and operating of the horizontal well with respect to the working interests of the parties covered by the joint operating agreement.

### MATERIAL FACTS TO WHICH NO GENUINE DISPUTE EXISTS

1.　　　　Crawley and Gastar both own oil and gas leasehold working interests in Section 8 Township 18N, Range 8W, Kingfisher County, Oklahoma ("Section 8"). Petition, paragraph 4; Answer, paragraph 4.

2.    Crawley and Gastar are both parties to a Joint Operating Agreement ("JOA") dated April 12, 1971, the Unit Area of which covers the Southeast Quarter (SE/4) and East Half of the Southwest Quarter (E/2 SW/4) and Southwest Quarter of the Southwest Quarter (SW/4 SW/4) of Section 8 ("JOA").  Petition, paragraph 5; Answer, paragraph 5.  Affidavit of Katie Jones, Exhibit 1, paragraph 4.  A copy of the JOA is Exhibit 1A to the Katie Jones Affidavit.  The amendment to the JOA that adds additional acreage to the JOA Unit Area is Exhibit 1B to the Affidavit of Katie Jones.

3.    A true copy of the JOA is Exhibit 1A to the Affidavit of Katie Jones, Exhibit 1 hereto.

4.    The JOA continues in effect.    Affidavit of Katie Jones, Exhibit 1, paragraph 5.

5.    By way of the JOA, Gastar and Crawley have agreed by contract to jointly develop their interests that are subject to the JOA.  Petition, paragraph 7; Answer, paragraph 7.  The JOA specifically provides:  "Whereas, the parties to this agreement are owners of oil and gas leases covering . . . the tracts of land described in Exhibit "A", and all parties have reached an agreement to explore and develop these leases and interests for oil and gas to the extent as hereinafter provided;" JOA, Exhibit 1A to Katie Jones' Affidavit, Exhibit 1 hereto.

6.    Crawley owns leasehold working interests both within and outside the JOA Unit Area.  Affidavit of Katie Jones, Exhibit 1, paragraph 3.

7.    Crawley initially proposed the drilling of a horizontal well through Section 8 to Gastar by way of letter dated February 15, 2017, a true copy of which is

2

Exhibit 1C. Crawley's horizontal well proposal letter was sent as a prerequisite to filing a forced pooling application regarding Section 8, but also states, "Note: If you have an interest that is subject to one of the operating agreements in effect for this Section, you will receive a proposal for that acreage in the near future."

8.      Crawley sent a supplemental Section 8 horizontal well proposal to Gastar dated April 12, 2017 ("Exhibit 1D hereto"), which was also a pooling prerequisite, but contained the following language, "Additionally, after further review of the files, it has been determined that your interest, at least partially, is subject to Operating Agreement dated April 12, 1971." The Crawley April 12, 2017 proposal goes on to state, "NOTE: The well will be proposed under the JOA, for the acreage subject to said JOA, at a later date. This proposal is only for your acreage that will be subject to an Corporation Commission pooling order."

9.      Crawley did not ultimately send a Section 8 horizontal well proposal pursuant to the JOA because Gastar and not Crawley was named as operator of the Section 8 horizontal well.

10.     Gastar proposed the drilling of a horizontal well in Section 8 by way of a letter dated February 8, 2017. Gastar's letter made no reference to the JOA.    Petition, paragraph 8; Answer, paragraph 8. Affidavit of Katie Jones, Exhibit 1, paragraph 7.

11.     Pursuant to Oklahoma Corporation Commission Spacing Order No. 660226 ("Spacing Order"), Section 8 was designated as a 640 acre horizontal well drilling and spacing unit as to the Mississippian (less Chester) and Woodford common sources of

supply for the drilling of the Horizontal Well.   Petition, paragraph 9; Answer, paragraph 9.

12.    A true copy of the Spacing Order is Exhibit No. 1E to Katie Jones Affidavit, Exhibit 1.

13.    The Spacing Order provides: "Subject to other provisions of the conservation laws, no more than one well shall hereafter be produced from the common source of supply on any unit established hereby . . . ."   Exhibit No. 1E to Katie Jones Affidavit, Exhibit 1.

14.    Both Crawley and Gastar filed forced pooling actions at the Corporation Commission in Cause CD No. 201702711 and Cause CD No. 201702100, respectively. The said forced pooling actions were consolidated and resulted in the issuance by the Corporation Commission of Order No. 668071 ("Pooling Order"), which force pooled Section 8 with respect to the Mississippian (less Chester) and Woodford common sources of supply underlying Section 8.  Petition, paragraph 11; Answer, paragraph 11.

15.    The Pooling Order provides that the applicants [Crawley and Gastar] have made a bona fide effort to reach an agreement with all other owners in the Section 8 drilling and spacing unit to pool their interests and voluntarily develop the drilling and spacing unit.  The Pooling Order does not provide that the applicants failed to reach such a development agreement with all such owners.  Petition, paragraph 12; Answer, paragraph 12.

16.    The Pooling Order provides that any oil and gas leasehold owner (the owner of a right to drill) in Section 8 who has not agreed to develop their lands shall be

4

afforded elections under the Pooling Order to either participate in the Horizontal Well or to accept a bonus and/or royalty payment in return for giving up its oil and gas leasehold interest. Petition, paragraph 13; Answer, paragraph 13.

17.     Subsequent to the issuance of the Pooling Order, Crawley submitted to Gastar its election to participate in the Section 8 horizontal well as set out in Crawley's election letter dated September 29, 2017, in which Crawley elected to participate in the Section 8 horizontal well pursuant to the Pooling Order with only its leasehold working interests in Section 8 that were not subject to the JOA, and further stated that Crawley would make its separate election pursuant to the JOA with respect to its interests subject to the JOA. Affidavit of Katie Jones, Exhibit 1, paragraph 15. Exhibit 1H to Katie Jones Affidavit.

18.     Gastar drilled the Yogi 1808 8-1UOH well ("Section 8 Horizontal Well") through Section 8, completing same on December 5, 2017. Affidavit of Katie Jones, Exhibit 1, paragraph 17.

19.     The surface location of the Section 8 Horizontal Well is not on Section 8, but rather in the southeast corner of Section 5-18N-8W, immediately north of Section 8. Affidavit of Katie Jones, Exhibit 1, paragraph 17.

20.     The producing interval of the Section 8 Horizontal Well is located along the east line of Section 8 from the north line to the south line. Approximately one-half of the Section 8 Horizontal Well producing interval passes through the SE/4 of Section 8, all of which is within the Unit Area of the JOA. Affidavit of Katie Jones, Exhibit 1, paragraph 17.

## INTRODUCTION

Crawley and Gastar are in the business of drilling and operating oil and gas wells or participating in them as non-operators.  Both parties own leasehold working interests in Section 8-18N-8W, Kingfisher County, Oklahoma ("Section 8"), which is the section at issue herein.  Fact No. 1.  Crawley and Gastar are both parties to an industry standard form joint operating agreement ("JOA") that covers all of the S/2 of Section 8 except for the 40 acres comprising the NW/4 of the SW/4 of Section 8.  Fact Nos. 2 and 3.  The JOA remains in effect.  Fact No. 4.

Both parties proposed the drilling of a horizontal well through Section 8. Crawley's well proposal letters, sent to Section 8 working interest owners, including Gastar, proposed the well pursuant to forthcoming Oklahoma Corporation Commission ("Corporation Commission") forced pooling proceedings, but indicated that a separate proposal would be forthcoming pursuant to the JOA with respect to owners of working interests subject to the JOA.  Fact Nos. 7 and 8.  Gastar's proposal did not reference the JOA.  Fact No.10.

Spacing Order No. 660226 was issued by the Corporation Commission creating a 640 acre horizontal well drilling and spacing unit in Section 8 for the proposed Section 8 Horizontal Well.  Fact Nos. 11 and 12.  The JOA Unit Area (the acreage covered by the JOA) covers a portion but not all of the Section 8 drilling and spacing unit.

Crawley and Gastar both filed forced pooling applications at the Corporation Commission.  These causes were consolidated, and the Corporation Commission issued

6

Order No. 668071 ("Pooling Order") covering Section 8. Critically, the Pooling Order does not contain language from the Pooling Statute (52 Okla. Stat. § 87.1(e)) that essentially states that the Corporation Commission can only pool working interest owners in a spacing unit that <u>have not agreed</u> to pool and develop their interests within the spacing unit. The Pooling Order also contains language in two separate sections that only owners in the Section 8 spacing unit who have not agreed with the Operator (designated as Gastar) to develop their interests may make elections to participate or not participate in the Section 8 Horizontal Well pursuant to the Pooling Order. Based on this language, the Pooling Order itself recognizes the existence of agreements to develop Section 8 oil and gas (including the JOA) that preclude the Pooling Order from pooling such interests subject to said agreements, including the JOA.

Crawley owns working interests in Section 8 that are subject to the JOA and other working interests that are not subject to the JOA and are subject to being pooled. Subsequent to the issuance of the Pooling Order, Crawley elected to participate in the drilling of the Section 8 Horizontal Well, both under the Pooling Order and the JOA, requesting Gastar to provide a separate well proposal pursuant to the JOA. Fact NO. 17.

Gastar drilled the Yogi 1808 8-1 UOH well as the Section 8 Horizontal Well. Fact No. 18. About one-half of the Horizontal Well's lateral line is contained within the Unit Area of the JOA. The surface location of the Horizontal Well is not on Section 8, but rather within the section immediately to the north. Fact Nos. 19 and 20.

7

## STANDARD FOR SUMMARY JUDGMENT

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.CIV.P. 56(c). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ARGUMENT

**I.    The Oklahoma Corporation Commission lacks authority to force pool the interests of Crawley that are subject to the JOA to which Crawley and Gastar are parties.**

The Corporation Commission can pool only those interests that are not subject to an agreement to develop oil and gas interests and lands as a unit. *Marathon Oil Co. v. Corp. Comm'n of State*, 1982 OK 19, 651 P.2d 1051, 1054, holds:

> As the pooling statute now reads, it is clearly not contemplated that all owners of a right to drill must be joined in a pooling action. 52 O.S.Supp.1979 § 87.1(e) states <u>the pooling action may be brought against those owners who have not agreed to develop as a unit</u>. The pertinent provision reads:
>
>> (e) <u>When two or more separately owned tracts of land are embraced within a spacing unit</u>, or where there are undivided interests separately owned, or both such separately owned tracts and undivided interests embraced within such established spacing unit, <u>the owners thereof may validly pool their interests and develop their lands as a unit. Where, however, such owners have not agreed to pool their interest</u>

8

>and where one such separate owner has drilled
>or proposes to drill a well on said unit to the
>common source of supply, the Commission, to
>avoid the drilling of unnecessary wells, or to
>protect correlative rights, shall, upon a proper
>application therefor and a hearing thereon,
>require such owners to pool and develop their
>lands in the spacing unit as a unit....

>Examination of the above language confirms the
>Commission's authority to pool, by administrative order,
>interests which were not voluntarily pooled. The authority to
>require pooling follows immediately upon language
>recognizing the validity of voluntary pooling agreements, and
>cannot be taken as a requirement that all owners must be
>pooled by order. [Emphasis added.]

The JOA is clearly an agreement by owners to validly pool their interests and

develop their lands. Page 1 of the JOA provides:

>WHEREAS, the parties to this agreement are owners of oil
>and gas leases covering . . . interests in tracts of land
>described in Exhibit "A", and all parties have reached an
>agreement to explore and develop their leases and interests
>for oil and gas to the extent and as hereinafter provided.

Crawley's interest subject to the JOA has already been validly pooled by agreement (the

JOA) and as contemplated by Section 87.1(e). It cannot be pooled again.

The Pooling Order itself contemplates the existence of the JOA and that the parties

thereto would not be subject to the Pooling Order. In two different sections, the Pooling

Order provides that only owners who have not agreed as to developing their interests may

elect to participate or not participate in operations pursuant to the Pooling Order: "Any

owner of the right to drill in said drilling and spacing unit who has not agreed with

Operator to develop said unit and common sources of supply shall be afforded the

9

following election as to all or any portion of said owner's interest:" Page 4, Section 3 of the Pooling Order;  Exhibit 1G.  Similar language in contained on Page 5, Section 4 of the Pooling Order limiting election right under the Pooling Order to owners who have not agreed to develop. Exhibit 1G.

In Section 4, Page 2 of the Pooling Order there is found the following language: "Applicants are the owners of the right to drill wells on said drilling and spacing unit and to develop and produce said common sources of supply, have made a bona fide effort to reach an agreement with all of the other such owners in such drilling and spacing unit as set forth in Exhibit "A", to pool their interests and develop the drilling and spacing unit and common sources of supply as a unit . . . . " .  However, noticeably lacking is the usual follow up sentence in a pooling order that provides to the effect that the applicant has not reached an agreement to develop with all of the owners.  The fact that this provision is normally contained in a pooling order is set out in *Kaneb Production Co. v. GHK Exploration Co.*, 1989 OK 11, 769 P.2d 1388, which, in holding that a joint operating agreement would not be considered with respect to whether the Corporation Commission had jurisdiction to pool interests subject to a joint operating agreement, set out the following language that was in the pooling order at issue in that case:

> Then on October 29, 1981, the Commission issued Order No. 201498, naming Kirby as the operator of the unit well and pooling the interests involved.  The order states that a bona fide effort was made to reach an agreement with each Respondent.  The Order also states the following:
>
> > "That Applicant has not agreed with all of the owners subject hereto to pool interests and to

develop each of the units as a unit." [Emphasis
added.]

The absence of the underlined language in the Pooling Order confirms the
existence of agreements with the Applicant/Operator to develop Section 8 interests and a
lack of a finding the there are no such agreements, such as the JOA.

Other well operators recognize existing joint operating agreements when
proposing the drilling of wells and when conducting operations on wells. The Affidavit
of Katie Jones, paragraph 18 testifies to the fact that Casillas Petroleum Resources
Partners, LLC, an operator headquartered in Tulsa, Oklahoma, proposed the drilling of a
horizontal well in Garvin County, Oklahoma pursuant to multiple joint operating
agreements, each of which has a joint operating agreement Unit Area that is contained
within the 640 acre horizontal well spacing unit established by the Oklahoma Corporation
Commission for the drilling of the horizontal well, but which Unit Area is smaller than
the 640 acre horizontal well spacing unit. In this instance, each JOA covers one quarter
section (one-fourth of the horizontal well spacing unit). As testified in the Affidavit of
Katie Jones, Casillas force pooled the working interest owners not subject to a joint
operating agreement. All of this is in compliance with Oklahoma law and the pooling
statute, 52 Okla. Stat. § 87.1(e), which provides that they agree to voluntarily pool their
interests in order to develop their lands, and that such owners who have not so agreed to
develop their lands may be force pooled by the Corporation Commission. Katie Jones'
affidavit, paragraphs 19 and 20 contain two other instance of operators proposing wells or

11

workovers of wells pursuant to existing joint operating units even though a forced pooling action was pending.

No doubt Gastar will present instances in which existing joint operating agreements are ignored and working interest owners who are subject to the joint operating agreements are forced pooled. If an operator files a forced pooling action and names a JOA party as a respondent, that party will be forced pooled unless it files a protest or insures that, as in present case, the pooling order contains language that only owners who have not agreed to develop their lands may elect pursuant to the pooling, and to eliminate from the pooling order language indicating that the pooling applicant has not reached a development agreement with all owners. The fact that a pooling applicant chooses to ignore the contract rights of parties to an existing joint operating agreement does not make it right and certainly does not comply with Oklahoma's pooling statute, which provides that owners may agree to pool their separately owned interests (such as by way of a JOA) and only owners who have not so agreed may be required to pool their interest by way of a Corporation Commission forced pooling proceeding.

There are reasons why an operator proposing the drilling of a well would choose to avoid doing so pursuant to an existing joint operating agreement. Dorsey Roach, in his Affidavit (Exhibit 2) testifies that he has compared the JOA in this case to the pooling order and has determined that the following benefits and rights of a non-operator (which correspond to additional obligations of the well operator) are present in the JOA but are absent in the Pooling Order:

12

a.      Right to defer payment of estimated monthly costs to be incurred for drilling and/or completion operations in the next succeeding month until receipt of a statement from the operator and an invoice allowing 15 days to pay or else be deemed non-consent.

b.      Right to receive well information on a timely basis including, but not limited to, daily drilling reports, completion reports and well logs.

c.      Right to receive, upon request, a detailed statement of charges to the joint account.

d.      Right to receive backup, upon request, to verify charges to the joint account.

e.      Right to receive advance notice, including estimated costs, of any proposed subsequent operation in an existing well including, but not limited to, reworking, recompleting, plugging back, sidetracking and deepening operations.

f.      Right to elect to go non-consent on any subsequent well or subsequent operation without having to forfeit all future development rights in the unit.

g.      Right to require the approval of all parties before a subsequent operation can be performed on a well that is currently producing, or capable of producing, in paying quantities.

h.      Right to propose subsequent operations, including subsequent wells, and to conduct the proposed operation or well should the operator elect not to participate.

i.      Right to receive complete copies of all Drilling Title Opinions and Division Order Title Opinions, and copies of curative material relative to a participant's interest.

j.      Right to examine an operator's books and records that are associated with operations in which a party participated.

k.      Right to an audit of the operator's books and records associated with operations in accordance with industry standard audit procedures.

l.      Right to receive a 30-day advance notice of an operator's plans to P&A a well, and the right to take over such well if a participant so elects.

m.    Right to require majority approval to perform workovers (maintenance and repair), or for the installation of equipment or facilities, if the estimated cost exceeds $5,000.

The valuable contract rights are simply terminated is a JOA is ignored and a JOA party subjected to forced pooling notwithstanding the existence of an agreement to develop with the Applicant/Operator as contemplated in the Pooling Statute.

## II.    The JOA applies to both vertical and horizontal wells.

The JOA does not make reference to "vertical" wells and does not limit the application of the JOA to only vertical wells.   Further, the JOA does not exclude horizontal wells from its application.  Affidavit of Dorsey Roach, Exhibit 2, paragraph 4. Rather, the JOA, in Section 12 at the top of Page 2, specifically provides for the "drilling of any well".  Exhibit 1A to the Affidavit of Katie Jones, Exhibit 1; Affidavit of Dorsey Roach, Exhibit 2, paragraph 4.

## III.   All of the Horizontal Well perforations and the full extent of the lateral are "developing" the JOA Unit Area; therefore, the JOA must control the drilling and operation of the horizontal well with respect to interests subject to the JOA.

Crawley understands that the Horizontal Well Lateral (the horizontal portion of the well from which production is obtained) extends beyond the Unit Area of the JOA. About half of the length of the lateral is within the JOA Unit Area in the SE/4 of Section 8 and about half extends to the north of the Unit Area.  Fact No. 20.  Also, the surface location of the Section 8 Horizontal Well is not located on the Unit Area.  However, it is not even located anywhere within the Section 8 Spacing Unit, but rather to the north of Section 8 in the adjacent Section 5-18N-8W.

14

Due to Oklahoma's spacing statute, the precise location of the Horizontal Well lateral line or the surface location does not matter.  Pursuant to the spacing statute, 52 Okla. Stat. § 87.1, a 640-acre horizontal well spacing unit consisting of Section 8 was created for the Horizontal Well, by way of Corporation Commission Spacing Order No. 660226 ("Spacing Order"). Fact No. 11.  The Spacing Statute specifically provides in Section 87.1 (c) that: "Subject to other provisions of Section 86.1, et seq. of this Title, the order establishing such spacing and drilling units shall direct that no more than one well shall thereafter be produced from the common source of supply on any unit so established . . . ."  The referenced Spacing Order also dutifully includes the limitation of only one well within the spacing unit.

Since there can only be one horizontal well in the Section 8 spacing unit, that well necessarily must drain <u>and develop</u> all of Section 8, including the Unit Area of the JOA covering most of the S/2 of Section 8.   The Oklahoma Supreme Court has further clarified the effect of creating a spacing unit in *Ward v. Corp Comm'n.,* 1972 OK 122, 501 P.2d 503, 507:

> Finally, we say that to give § 87.1 a construction that meets the constitutional requirements of due process, this section must mean, consonant with our holdings in Wood Oil Co. Cases Nos. 2 and 3, that the oil and gas lessees and others who own interests in the spacing (drilling) unit, share in the production of the unit well (whether drilled before or after the spacing (drilling) unit is established as of the time the unit is established. At the time the unit is established a unit well is or probably soon will be producing oil or gas. At the moment production commences, resulting pressure differentials in the common source of supply portend, in greater or less degree, drainage <u>from all parts of the unit</u> toward the producing unit well. <u>This drainage is occurring from areas where</u>

<u>oil and gas lessees are prohibited from doing anything to protect</u>
<u>their leased premises from drainage.</u>

The drainage of oil and gas referred to in *Ward* includes the Unit Area of the JOA, and thus the Horizontal Well at issue herein develops the lands and interests of the JOA working interest owners. This fits with the specific language on Page 1 of the JOA:

> WHEREAS, the parties to this agreement are owners of oil and gas leases covering . . . tracts of land described in Exhibit "A", and all parties have reached an agreement to explore and <u>develop</u> these leases and interests for oil and gas to the extent and as hereinafter provided.

Therefore, with respect to the working interests subject to the JOA, all of the Horizontal Well Lateral develops all of the JOA Unit Area and the drilling and operation of the Horizontal Well is a proper operation to be conducted pursuant to the terms of the JOA. Gastar, as a party to the JOA along with Crawley, must propose, drill and operate the Horizontal Well pursuant to the JOA with respect to the JOA interests. Gastar is free to propose, drill and operate the Horizontal Well pursuant to the Pooling Order with respect to interests not subject to the JOA. This conforms to the language of the Oklahoma Pooling Statute, 52 Okla. Stat. § 87.1(e):

> When two or more separately owned tracts of land are embraced within an established spacing unit, or where there are undivided interests separately owned, or both such separately owned tracts and undivided interests embraced within such established spacing unit, <u>the owners</u> thereof <u>may</u> <u>validly pool</u> their interests <u>and develop</u> their lands as a unit. Where, <u>however</u>, such <u>owners have not agreed to pool</u> their interests and where one such separate owner has drilled or proposes to drill a well on the unit to the common source of supply, the Commission, to avoid the drilling of unnecessary wells, or to protect correlative rights, shall, upon a proper application therefor and a hearing thereon, <u>require such</u>

> owners to pool and develop their lands in the spacing unit as a
> unit. [Emphasis added.]

Gastar may pool working interest owners in Section 8 that "have not agreed to pool their interests" but may not pool Section 8 working interest owners to the extent of their working interests that are subject to an agreement to "validly pool their interests and develop their lands", including Crawley's interest that is subject to the JOA.

## IV.    This lawsuit is not an impermissible collateral attack on the Pooling Order.

Crawley recognizes that 52 Okla. Stat. § 111 provides that no collateral attack shall be allowed upon the orders of the Corporation Commission, including proceedings to annul or modify such orders. However, Crawley is not seeking to annul, modify or otherwise change the Section 8 Pooling Order at issue herein. Instead, Crawley seeks to implement the Pooling Order as it is written and as it relates to working interest owners in Section 8 who have previously agreed with the designated Operator (Gastar) to develop their working interests contained within the Section 8 spacing unit.

The Pooling Order, as written, recognizes agreements between working interest owners in Section 8 and Gastar, as the Operator, to develop Section 8, including the JOA. Additionally, the Pooling Order does not find or provide that applicants have not reached agreement with all owners.

The importance of the omission of the provision that applicants have not reached agreements with all owners is highlighted in the Oklahoma Supreme Court Case, *Kaneb Production Co. v. GHK Exploration Co.*, 769 P.2d 1388, which refused to allow an action seeking to invalidate a Corporation Commission pooling order based on the prior

17

existence of a joint operating agreement. Critical to the Court's ruling is the following language:

> Then on October 29, 1981, the Commission issued Order No. 201498, naming Kirby as the operator of the unit well and pooling the interests involved. The order states that a bona fide effort was made to reach an agreement with each Respondent. The Order also states the following:
>
>> "That Applicant has not agreed with all of the owners subject hereto to pool interests and to develop each of the units as a unit."

The Court obviously placed emphasis on the quoted language from the pooling order that the Applicant had not agreed with all of the owners subject to the pooling order to pool interests and develop each of the units as a unit, which sets up compliance with the Oklahoma Pooling Statute, 52 Okla. Stat. § 87.1(e) that provides in pertinent part:

> When two or more separately owned tracts of land are embraced within an established spacing unit, or where there are undivided interests separately owned, or both such separately owned tracts and undivided interests embraced within such established spacing unit, the owners thereof may validly pool their interests and develop their lands as a unit. Where, however, such owners have not agreed to pool their interests and where one such separate owner has drilled or proposes to drill a well on the unit to the common source of supply, the Commission, to avoid the drilling of unnecessary wells, or to protect correlative rights, shall, upon a proper application therefor and a hearing thereon, require such owners to pool and develop their lands in the spacing unit as a unit. [Emphasis added.]

Since the pooling order in *Kaneb* found that the Applicant had not agreed with all owners to pool and develop, the Commission had the prerequisite for force pooling all interests pursuant to the second sentence in the above statutory quote providing that "Where,

however, such owners have not agreed to pool their interests . . . the Commission . . . shall, upon proper application therefore and a hearing thereon, require such owners to pool and develop their lands in the spacing unit as a unit."

Critically, a review of the Section 8 Pooling Order at issue herein reveals that the second sentence as quoted above in the *Kaneb* decision has been omitted from the Section 8 Pooling Order.  Said Pooling Order states on Page 2, Section 4:  "Applicants are the owners of the right to drill wells on said drilling and spacing unit and to develop and produce said common sources of supply, have made a bona fide effort to reach an agreement with all of the other such owners in such drilling and spacing unit as set forth in Exhibit "A", to pool their interests and develop the drilling and spacing unit and common sources of supply as a unit . . . . "  However, the Section 8 Pooling Order does not follow along by including language equivalent the second sentence quoted above in the *Kaneb* case, which is that no agreements have been reached.  More importantly, Pooling Order does not include the similar language of the above-quoted Pooling Statute setting up the absence of such agreements as the prerequisite to pooling.  Pooling Order, Exhibit 1G to Katie Jones Affidavit, Exhibit 1.

Therefore, the language of the Pooling Order, as well as language that has been omitted from the Pooling Order, confirms that there is a preexisting agreement or agreements to develop Section 8 oil and gas, including the JOA to which Gastar and Crawley are parties.

There is other language in the Pooling Order confirming the existence of preexisting agreements to develop Section 8.  On Page 4, Section 3 of the Pooling Order

appears the following language: "Any owner of the right to drill in said drilling and spacing unit <u>who has not agreed with Operator to develop</u> said unit and common sources of supply shall be afforded the following election as to all or any portion of said owner's interest:"

This language makes it very clear that there are parties to preexisting agreements to which this Pooling Order does not apply, including the interests of Crawley and Gastar that are subject to the JOA. Gastar is the Operator as designated in the Pooling Order, Section 9. Crawley, with respect to its interests subject to the JOA has agreed with the Operator to develop Section 8 oil and gas interests subject to the JOA.

To further confirm the intent of the Pooling Order, Section 4 on Page 5 thereof contains virtually the same language limiting the application of the Pooling Order and elections pursuant to the Pooling Order to only an owner of the right to drill in the said drilling and spacing unit <u>who has not agreed to develop</u>.

Crawley therefore requests that this Court determine that its JOA interests and rights have not been respectively pooled and terminated by the Pooling Order and that the JOA controls the proposal, drilling and operating of the Section 8 Horizontal Well with respect to interests subject to the JOA.

## **PRAYER**

WHEREFORE, Plaintiff Crawley Petroleum Corporation requests that this Court find and declare that Crawley and Gastar Exploration, Inc. are parties to the Joint Operating Agreement dated April 12, 1971, covering a portion of the Section 8 Spacing Unit for the Section 8 Horizontal Well; that the said JOA continues in effect; that the

interests of Crawley and Gastar have not been forced pooled by Corporation Commission Pooling Order No. 668071; and that the said JOA governs the proposal, drilling and operating of the Section 8 Horizontal Well; and for such other relief as this Court deems just.

Respectfully submitted,

s/Charles L. Puckett
Charles L. Puckett, OBA No. 7340
Brian R. Matula, OBA No. 14778
ATTORNEYS FOR PLAINTIFF
GUM, PUCKETT & MACKECHNIE, L.L.P.
105 North Hudson, Suite 900
Oklahoma City, Oklahoma 73102
Telephone:  405.488.1212
Fax:  405.488.1216
Email Address for Service:
    clpuckett@gpmlegal.net
    brmatula@gpmlegal.net
*Attorneys for Plaintiff,*
*Crawley Petroleum Corporation*

21

## CERTIFICATE OF SERVICE

I hereby certify that on 7th day of September, 2018, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Michael R. Perri, Esq.
Jason A. Dunn, Esq.
PHILLIPS MURRAH P.C.
Corporate Tower, 13th Floor
101 North Robinson
Oklahoma City, OK 73102

s/Charles L. Puckett