## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

CRAWLEY PETROLEUM CORPORATION, )
                                            )
              Plaintiff,        )
                                            )
v.                                   )    Case No. CIV-17-1365-SLP
                                            )
GASTAR EXPLORATION, INC.,         )
                                            )
              Defendant.     )

## AFFIDAVIT OF KATIE JONES

Katie Jones, being of legal age and sound mind, states the following upon her oath:

1.     My name is Katie Jones. I have been a Landman for Plaintiff, Crawley Petroleum Corporation ("Crawley") for seven-and-one-half years, and I also perform land work for Crawley's wholly owned subsidiaries PDI, Inc. and 101 Energy Corporation.

2.     I am familiar with and have primary land responsibilities for oil and gas operations in Section 8-18N-8W, Kingfisher County, Oklahoma ("Section 8").

3.     Crawley and Defendant, Gastar Exploration, Inc. ("Gastar") own leasehold working interests in Section 8, some of which are subject to the JOA and some of which are not subject to the JOA.

4.     Attached hereto is Exhibit 1A, which is a true copy of the Joint Operating Agreement dated April 12, 1971 covering the Southeast Quarter (SE/4) of Section 8 ("JOA"). Exhibit 1A filed under seal pursuant to Agreed Protective Order filed June 26, 2018. The form of the JOA is the Model Form Operating Agreement – 1956. The JOA was amended by way of letter agreement dated July 15, 1971 ("Amendment"), which increased the size of the lands subject to the JOA ("Unit Area") to include the East Half of the Southwest Quarter (E/2 SW/4) and the Southwest Quarter of the Southwest Quarter (SW/4 SW/4) of Section 8. A true copy of said

**EXHIBIT**
**1**

Amendment is attached hereto as Exhibit 1B. Exhibit 1B filed under seal pursuant to Agreed Protective Order filed June 26, 2018.

5.    The JOA is currently in effect and Defendant, Gastar Exploration, Inc. and Crawley are currently parties to the JOA.

6.    Crawley initially proposed the drilling of a horizontal well through Section 8 to Gastar by way of letter dated February 15, 2017, a true copy of which is attached hereto as Exhibit 1C. Exhibit 1C filed under seal pursuant to Agreed Protective Order filed June 26, 2018. Crawley's horizontal well proposal letter was sent as a prerequisite to filing a forced pooling application regarding Section 8, but also states that: "Note: If you have an interest that is subject to one of the operating agreements in effect for this Section, you will receive a proposal for that acreage in the near future." Crawley sent a supplemental Section 8 horizontal well proposal to Gastar dated April 12, 2017 ("Exhibit 1D, attached hereto"), which was also a pooling prerequisite, but contained the following language, "Additionally, after further review of the files, it has been determined that your interest, at least partially, is subject to Operating Agreement dated April 12, 1971." Exhibit 1D filed under seal pursuant to Agreed Protective Order filed June 26, 2018. The Crawley April 12, 2018 proposal goes on to state: "NOTE: The well will be proposed under the JOA, for the acreage subject to said JOA, at a later date. This proposal is only for your acreage that will be subject to an OCC pooling order." Crawley sent out two additional Section 8 horizontal well proposal supplements that were intended to clarify and update the earlier Section 8 proposal letters. Crawley did not ultimately send a Section 8 horizontal well proposal pursuant to the JOA because Gastar, and not Crawley, was named as operator of the Section 8 horizontal well.

7.    On February 8, 2017, Gastar sent a Section 8 horizontal well proposal letter to Crawley, as a prerequisite to the Section 8 forced pooling and made no reference to the JOA.

8.    Crawley and Gastar both filed horizontal well Applications with the Oklahoma Corporation Commission ("OCC") to establish a 640 acre horizontal well drilling and spacing unit for the drilling of the Section 8

horizontal well.  Gastar dismissed its Application and Crawley obtained OCC Order No. 666226 (attached hereto as Exhibit No. 1E) creating the 640 acre horizontal well drilling and spacing unit comprised of Section 8. Said Order provides: "Subject to other provisions of the conservation laws, no more than one well shall hereafter be produced from the common source of supply on any unit established hereby . . . ."

9.  Crawley and Gastar both filed Applications with the OCC for forced pooling orders covering Section 8.  The Applications were consolidated and a hearing was had on the pooling Applications on July 27, 2017.  I ordered a transcript of the pooling hearing and received a typed transcript certified by the court reporter on January 24, 2018.  Attached as Exhibit 1F are relevant pages from said transcript.

10.  On September 12, 2017, OCC Pooling Order No. 668071 ("Pooling Order") was issued jointly in both the Crawley and Gastar pooling applications, a true copy of which is attached hereto as Exhibit 1G.

11.  The Pooling Order No. 668071 provides on Page 2 thereof that Applicants "have made a bona fide effort to reach an agreement with all of the other such owners in such drilling and spacing unit [Section 8], as set forth on Exhibit "A", to pool their interests and develop the drilling and spacing unit and common sources of supply as a unit . . . "  However, Order No. 668071 does not contain language to the effect that Applicants have not agreed with all of the owners subject to this pooling application to pool interests and to develop the drilling and spacing unit by way of an agreement.

12.  The Pooling Order provides in Paragraph 1 in the Order Section at the top of Page 3 as follows:  "And the rights and equities of all oil and gas owners covered hereby are pooled, adjudicated and determined."  [Emphasis Added.]

13.  The Pooling Order provides in Paragraph 3 of the Order Section on Page 4: "Any owner of the right to drill in said drilling and spacing unit who has not agreed with Operator to develop said unit and common sources of supply shall be afforded the following election as to all or any portion of said owner's interest: . . . "  [Emphasis Added.]

14.    The Pooling Order provides in Paragraph 4 the Order Section on Page 5: "Each owner of the right to drill in said drilling and spacing unit to said common sources of supply covered hereby who has not agreed to develop said unit as a unit, other than Operator, should be required to select which of the alternatives set out in paragraph 3 above, such owner accepts, . . . "

15.    Subsequent to the issuance of the Pooling Order, Crawley prepared and submitted to Gastar its election to participate in the Section 8 horizontal well as set out in Crawley's election letter dated September 29, 2017 (a true copy of which is attached hereto as Exhibit 1H), in which Crawley elected to participate in the Section 8 horizontal well pursuant to the Pooling Order with only its leasehold working interests in Section 8 that were not subject to the JOA, and further stated that Crawley would make its separate election pursuant to the JOA with respect to its interests subject to the JOA.

16.    Crawley received a letter from Gastar dated October 10, 2017 (a true copy of which is attached hereto as Exhibit 1I), in which Gastar stated that it was providing Crawley with another opportunity to make an election pursuant to the Pooling Order with respect to its full working interest in Section 8. Crawley responded confirming Crawley's election to participate whether pursuant to the Pooling Order or JOA.  Exhibit 1I.  Exhibit 1I filed under seal pursuant to Agreed Protective Order filed June 26, 2018.

17.    Gastar drilled the Yogi 1808 8-1UOH well ("Section 8 Horizontal Well") through Section 8, completing same on December 5, 2017.  The surface location of the Section 8 Horizontal Well was not on Section 8, but rather in the southeast corner of Section 5-18N-8W, immediately north of Section 8.  The producing interval of the Section 8 Horizontal Well is located along the east line of Section 8 from the north line to the south line. Approximately one-half of the Section 8 Horizontal Well producing interval passes through the SE/4 of Section 8, all of which is within the Unit Area of the JOA.

18.    101 Energy Corporation (wholly owned subsidiary of Crawley) owns leasehold working interest in Section 15-4N-4W, Garvin County, OK. Attached as Exhibit 1J is a horizontal well proposal letter dated November 13, 2017, from Casillas Petroleum Resources Partners, LLC to 101 Energy Corporation proposing a horizontal well in Sections 10 and 15-4N-4W, Garvin County, OK, referencing three quarter section JOAs.  Exhibit 1J also shows acceptance and election to participate pursuant to a JOA by 101 Energy Corporation.   The said Section 15 was also forced pooled by Casillas, with respect to owners not subject to the JOA.  I have personal knowledge that Exhibit 1J is a true copy of the well proposal letter from

4

Casillas received by 101 Energy Corporation in the ordinary course of business and is on file in the offices of 101 Energy Corporation and Crawley.

19.    Another wholly owned subsidiary of Crawley, PDI, Inc., owns leasehold working interest in Section 28-4N-4W, Garvin County, OK. Exhibit 1K consists of a proposal for a horizontal well to be drilled by Casillas Petroleum Resources Partners, LLC through Sections 28 and 33-4N-4W, Garvin County, OK. Page 2 of the proposal references three joint operating agreements located in Section 28-4N-4W and provides PDI, Inc. with the opportunity to elect to participate or not pursuant to the applicable JOAs. The joint operating agreements referenced in Exhibit 1K each cover only a quarter section of Section 28-4N-4W, Garvin County, OK. Said Section 28 is spaced as a 640-acre horizontal well spacing unit. The said Section 28 was also forced pooled by Casillas, with respect to interests not subject to the JOA. I have personal knowledge that Exhibit 1K is a true copy of the well proposal letter from Casillas received by PDI, Inc. in the ordinary course of business and is on file in the offices of PDI, Inc. and Crawley.

20.    Crawley is a leasehold working interest owner in Section 14-18N-8W, Kingfisher County, OK. Crawley received from Chisolm Oil and Gas Operating, LLC a horizontal well workover proposal for the Preacher Creek Ranch 1-14 MH horizontal well located in the said Section 14. The workover was proposed pursuant to the terms of a joint operating agreement dated August 4, 1970. I have personal knowledge that the referenced joint operating agreement covers less than the 640-acre spacing unit comprised of the said Section 14. The Chisholm workover proposal is Exhibit 1L. I have personal knowledge that Exhibit 1L is a true copy of the workover proposal from Chisolm received by Crawley in the ordinary course of business and is on file in the offices of Chisolm and Crawley. Said Section 14 is spaced as a 640-acre horizontal well spacing unit. Additionally, the said Section 14 was forced pooled pursuant to OCC Pooling Order No. 669526, as to working interests not covered by the JOA.

FURTHER THE AFFIANT SAYETH NOT.

5

Dated:  September  7  , 2018.


                                            Katie Jones
                                            Landman
                                            Crawley Petroleum Corporation


     SWORN TO AND SUBSCRIBED before me by Katie Jones on this 7ᵗʰ day of September, 2018, to certify which, witness my hand and seal of office.

(SEAL)

                                               Notary Public

My Commission Number:  11 003721
My Commission Expires:  4/25/19



BEFORE THE CORPORATION COMMISSION OF THE STATE OF OKLAHOMA

APPLICANT: CRAWLEY PETROLEUM CORPORATION

RELIEF SOUGHT: HORIZONTAL WELL UNITS

LEGAL DESCRIPTION: SECTION 8, TOWNSHIP )    CAUSE CD NO. 201700657
18 NORTH, RANGE 8 WEST, KINGFISHER COUNTY, )
OKLAHOMA                   )    ORDER NO. **666226**

### ORDER OF THE COMMISSION

1.  Hearing Date and Place: 8:30 a.m., the 12th day of June, 2017, Jim Thorpe Building, Oklahoma City, Oklahoma.

2.  Appearances: Charles L. Helm, Attorney, appeared for the Applicant, Crawley Petroleum Corporation; and Karl Hirsch, Attorney, appeared for Gastar Exploration Inc. and Anadarko Minerals.

3.  Notice and Jurisdiction: Notice has been given as required and the Commission has jurisdiction of the subject and the persons. With regard to each respondent, if any, whose address is listed as unknown in the Application on file in this Cause, or whose address is listed as known in such Application, but on whom the Applicant was unable to deliver notice because such address is apparently no longer valid, the Administrative Law Judge conducted an inquiry and determined that the Applicant has made a diligent effort to locate the whereabouts of such respondent using available primary and secondary sources, and service by publication with regard to such respondent has been duly and legally made in the Commission, after examining the records and proof of publication, approves the process.

4.  Amendments: At the time of hearing, the Application was amended to refer to the Mississippian as the Mississippian (less Chester) common source of supply, by extension of Order No. 647839.

5.  Relief Requested:

    5.1  Concurrent Spacing:

        a.  Order No. 34429 created 640-acre units for the Basal Pennsylvanian-Mississippian Unconformity (Cherokee-Chester) common source of supply underlying Section 8, Township 18 North, Range 8 West, Kingfisher County, Oklahoma.

        b.  Order No. 175419 created 160-acre units for the Mississippi Lime, Misener-Hunton and Oswego common sources of supply underlying the N/2 of Section 8, Township 18 North, Range 8 West, Kingfisher County, Oklahoma.



EXHIBIT
1E

**CONFIDENTIAL**                            **CRAWLEY 000179**

APPLICANT: CRAWLEY PETROLEUM CORPORATION
CAUSE CD NO.: 201700657
PAGE TWO

c.  Applicant's evidence shows that there is production from the described common sources of supply which requires said spacing to run concurrent with the horizontal spacing requested herein. Applicant's evidence shows the following wells produce from the non-horizontal drilling and spacing units described above underlying Section 8, Township 18 North, Range 8 West, Kingfisher County, Oklahoma:

| Operator | Well Name |
|---|---|
| Anadarko Minerals, Inc. | Elly - Bollenbach #2 (API No. 073-22978) |
| Crawley Petroleum Corporation | E.M. Bollenbach #1 (API No. 073-21059) |

all underlying Section 8, Township 18 North, Range 8 West, Kingfisher County, Oklahoma.

Applicant has obtained consent from the owners required by OCC Rules of Practice 165:5-7-6 and filed the same with the Commission.

5.2  New Horizontal Spacing Requested: The common sources of supply named below underlie the lands described in the caption at the approximate depths shown below. The classification of the production anticipated from said common sources is as shown. The following sized horizontal drilling and spacing units should be established:

| Common Source of Supply | Depth | Classification | Horizontal Unit Size | Extension Order |
|---|---|---|---|---|
| Big Lime-Oswego | 6,700' | Oil | 640-acre Horizontal | 653404 |
| Mississippian (less Chester) | 7,520' | Oil | 640-acre Horizontal | 647839 |
| Woodford | 8,300' | Oil | 640-acre Horizontal | 653404 |
| Misener-Hunton | 8,330' | Oil | 640-acre Horizontal | 653404 |

underlying Section 8, Township 18 North, Range 8 West, Kingfisher County, Oklahoma.

CONFIDENTIAL

CRAWLEY 000180

APPLICANT: CRAWLEY PETROLEUM CORPORATION
CAUSE CD NO.: 201700657
PAGE THREE

6.  Relief Granted: The requested relief is granted. Subject to other provisions of the conservation laws, no more than one well shall hereafter be produced from the common source of supply on any unit established hereby and the well permitted on that unit shall be drilled at the location prescribed below.

7.  Form and Shape of Units: The 640-acre horizontal units established hereby shall be formed as follows:

    Underlying each governmental section.

8.  Location of Unit Wells: The unit well for the 640-acre horizontal unit established hereby shall be located as follows:

    Not closer than 660 feet from the unit boundary for the Big Lime-Oswego, Mississippian (less Chester) and Misener-Hunton common sources of supply; and not closer than 165 feet from the North and South unit boundary and not closer than 330 feet from the East and West unit boundary for the Woodford common source of supply.

9.  Map Attached: Attached to this Order is a plat indicating the information required by statute.

10. Reconciliation of Conflicting Nomenclature or Spacing: None.

11. Special Finding: There is no current production from the common sources of supply requested for spacing herein on the captioned lands, except as provided in Paragraph 5.1(c) herein.

12. Conclusion: The relief requested is necessary to prevent or to assist in preventing the various types of waste of oil or gas prohibited by statute, or any of said wastes, and to protect or assist in protecting the correlative rights of interested parties. Such requested relief, as set forth above, should be granted and IT IS SO ORDERED.

    DONE AND PERFORMED this _24th_ day of _July_, 2017.

                                        CORPORATION COMMISSION OF OKLAHOMA

                                        DANA L. MURPHY, Chairman

                                        J. TODD HIETT, Vice Chairman

                                        BOB ANTHONY, Commissioner

ATTEST:

PEGGY MITCHELL, Commission Secretary
JOYCE CONNER, Assistant Secretary

**CONFIDENTIAL**                                        **CRAWLEY 000181**

APPLICANT: CRAWLEY PETROLEUM CORPORATION
CAUSE CD NO.: 201700657
PAGE FOUR

## REPORT OF THE ADMINISTRATIVE LAW JUDGE

THE FOREGOING FINDINGS AND ORDER ARE THE REPORT AND RECOMMENDATIONS OF
THE ADMINISTRATIVE LAW JUDGE.

KEITH THOMAS, Administrative Law Judge                    6/30/17
                                                         Date

Reviewer                                                 7/14/17
                                                         Date

Approved as to form and content:

**E X H I B I T   "A"**

APPLICANT: CRAWLEY PETROLEUM CORPORATION
CAUSE CD NO.: 201700657

SECTION PLAT



- 660' -

| LANDS COVERED: | Section 8, Township 18 North, Range 8 West, Kingfisher County, Oklahoma. |
|---|---|
| FORMATIONS: | Big Lime-Oswego, Mississippian (less Chester) and Misener-Hunton. |
| UNIT SIZE: | 640-acre horizontal drilling and spacing units. |
| UNITS FORMED: | Underlying each governmental section. |
| PERMITTED WELL: | Not closer than 660 feet from the unit boundary. |

**CONFIDENTIAL**

**CRAWLEY 000183**

E X H I B I T  "A"

APPLICANT: CRAWLEY PETROLEUM CORPORATION
CAUSE CD NO.: 201700657
PAGE TWO

SECTION PLAT



**LANDS COVERED:**    Section 8, Township 18 North, Range 8 West, Kingfisher County, Oklahoma.

**FORMATIONS:**    Woodford.

**UNIT SIZE:**    640-acre horizontal drilling and spacing units.

**UNITS FORMED:**    Underlying each governmental section.

**PERMITTED WELL:**    Not closer than 165 feet from the North and South unit boundary and not closer than 330 feet from the East and West unit boundary.

CRAWLEY 000184

rdh-37

1    A.   No.

2    Q.   But when we look at Exhibit No. 3, they've now

3    changed to the Barry Bollenbach 1-8MH, right?

4    A.   Yes.

5    Q.   And that's because the Bollenbach's are the major

6    owners out there -- well, we don't know why they named

7    it that.   But that's a common thing to do, name the

8    well after the surface owner or the major owner,

9    correct?

10    A.   Yes, even though we haven't, you know, finalized

11    the location.

12    Q.   We don't know what -- I mean, you're not testifying

13    as to what Crawley may have done.   You're just simply

14    testifying as to what Gastar has done with regard to

15    surface location, right?

16    A.   Right.

17    Q.   So Gastar's investigating a drilling pad that could

18    drill Sections 7 and 8 from the same drilling pad?

19    A.   Correct.

20    Q.   Now, Mr. Elliot, one of the exhibits exchanged by

21    Crawley in the Exhibit 8 exchange for this case is a

22    Joint Operating Agreement.   Is that correct?

23    A.   That is correct.

24    Q.   And have you reviewed that?

25    A.   Yes, I have.

OKLAHOMA CORPORATION COMMISSION – OFFICIAL TRANSCRIPT



EXHIBIT
1F

CONFIDENTIAL                    CRAWLEY 000263

rdn-38

1    Q.    Do you have the date of that Operating Agreement?

2    A.    It was -- it was -- the original Joint Operating

3    Agreement was dated April 12th, 1971.    And it appears

4    to have been amended July 15th, 1971.

5    Q.    And it originally covered what?

6    A.    It originally covered the southeast quarter of

7    Section 8 of 18 North, 8 West.

8    Q.    And did the amendment change that?

9    A.    Yes.    It added to the unit area the east half of

10    the southwest quarter and the southwest of the

11    southwest quarter.

12    Q.    Are there any wells still producing in the

13    southeast quarter of Section 8?

14    A.    No, there are not.

15    Q.    Are there any wells currently producing in the east

16    half southwest quarter or southwest quarter southwest

17    quarter of Section 8?

18    A.    Yes.

19    Q.    Who operates that well?

20    A.    Crawley Petroleum.

21    Q.    What form is that Joint Operating Agreement?

22    A.    It is the 1956 -- Model Form 1956.

23    Q.    To the best of your knowledge, the well in the

24    southwest quarter of Section 8 that is operated by

25    Crawley, was it drilled on a leasehold basis?

OKLAHOMA CORPORATION COMMISSION – OFFICIAL TRANSCRIPT

CONFIDENTIAL

CRAWLEY 000264

rdh-39

1  A.  Yes, that's my -- you know, that's my belief.

2  Q.  And so what happened to the lease in the southeast

3  quarter that was originally subject to the 1956 Form

4  Operating Agreement?

5  A.  It expired.

6  Q.  And has that interest since been leased?

7  A.  Yes.

8  Q.  By whom?

9  A.  By Gastar Exploration.

10 Q.  And when was that -- when did that lease take

11 place?

12 A.  February the 5th, 2016.

13 Q.  So under that Operating Agreement, that would not

14 be a renewal or an extension of the original lease, is

15 that correct?

16 A.  Correct.

17 Q.  So, in your opinion, is that lease covering the

18 southeast quarter of Section 8 subject to that

19 Operating Agreement?

20 A.  No, it would not be.

21       MR. HIRSCH:  May I have just a moment?

22       THE COURT:  Certainly.  Let's go off the

23 record briefly.

24    (Whereupon, an off-the-record discussion was had.)

25       MR. HIRSCH:  We would offer Exhibit 7 if I did

OKLAHOMA CORPORATION COMMISSION – OFFICIAL TRANSCRIPT

CONFIDENTIAL

CRAWLEY 000265

rdh-40

1   not do so already.

2           THE COURT:  If there are no objections?

3           MR. HELM:  I'm sorry?

4           THE COURT:  Exhibit 7.

5           MR. HELM:  No objection.

6           THE COURT:  I admit Exhibit 7.

7           MR. HIRSCH:  I would tender the witness.

8           MR. HELM:  Judge, can we have a short bathroom

9   break?

10          THE COURT:  All right.  We'll go off the

11  record.

12      (Whereupon, a recess was had at this juncture.)

13               ** ** ** ** ** ** **

14          THE COURT:  Allow me to reopen the record.

15  All right, Mr. Helm.

16          MR. HELM:  Thank you.

17          THE COURT:  You may cross the witness.

18  MR. JACK ELLIOT RESUMED THE WITNESS STAND AND TESTIFIED

19  FURTHER ON HIS OATH AS FOLLOWS, TO WIT:

20                   CROSS-EXAMINATION

21  BY MR. HELM:

22  Q.  Mr. Elliot, good morning.

23  A.  Good morning.

24  Q.  You understand I represent Crawley in this matter?

25  A.  Yes, I do.

OKLAHOMA CORPORATION COMMISSION – OFFICIAL TRANSCRIPT

rdh-41

1  Q.  And you recognize that Crawley is requesting or

2  will request that they be the operator under any

3  pooling orders that issue in these cases?

4  A.  Yes, I'm aware of that.

5  Q.  And I understand your position is that Gastar

6  should be the operator of those poolings.

7  A.  That's also correct.

8  Q.  All right, sir.  Jack, we've known each other a

9  long time but I never asked, do you have a law degree?

10  A.  Yes, I do.

11  Q.  I thought I remembered that from old days.

12  A.  Very good.

13  Q.  When you were expressing your opinions with regard

14  to a JOA issue, were you expressing that in the

15  capacity as an expert in legal matters or land matters,

16  or just your opinion individually?

17  A.  An expert I guess in land matters in my opinion,

18  but not as an attorney.

19  Q.  All right, sir.  Have you had an attorney -- law

20  firm or an attorney give you a written opinion with

21  regard to the existing JOA that you discussed?

22  A.  I have not.

23  Q.  Okay.  All right.  Would -- there was an exhibit

24  exchanged during the course of the exhibit exchange and

25  one of them was Crawley actually had an exhibit

CONFIDENTIAL

CRAWLEY 000267

rdh-42

1    prepared that illustrated that Joint Operating

2    Agreement that you discussed on direct examination.

3    Did you get a chance to see that exhibit?

4    A.  I certainly did, yes.

5    Q.  Does it include --

6            THE COURT:  Do I have that exhibit?

7            MR. HELM:  You don't yet, Your Honor.  We have

8    it as one of our exhibits to introduce.

9            THE COURT:  Okay.

10            MR. HELM:  I don't think there's a dispute,

11    but I'll just ask Mr. Elliot.

12    Q.  (Mr. Helm continues) Would it be true that if a

13    lateral were drilled across Section 8, either

14    north-to-south, south-to-north, that it would drill

15    across at least the lands that you described were

16    covered by the old JOA?

17    A.  It'd definitely be covered by the old JOA, yes.

18    Q.  Okay; all right.  And with regard to -- I think you

19    mentioned some wells.  Is there an existing producing

20    well in the south half of Section 8 that's operated by

21    Crawley Petroleum?

22    A.  Yes, there is one.

23    Q.  Is that, for the record, the EM Bollenbach?

24    A.  Yes.

25    Q.  For the court reporter, is that

OKLAHOMA CORPORATION COMMISSION – OFFICIAL TRANSCRIPT

CONFIDENTIAL                    CRAWLEY 000268

rdh-43

1  B-O-L-L-E-N-B-A-C-H?

2  A.  Yes.

3  Q.  All right, sir.  And are you aware that when we

4  pursued the spacing application on behalf of Crawley

5  Petroleum in this matter that's been referred to by

6  Mr. Hirsch previously, we made reference to the fact

7  that that EN Bollenbach #1 is currently producing and

8  it's producing from a member of the Mississippian,

9  which was -- or Mississippian (less Chester), which was

10  part of the application?

11  A.  Correct.

12  Q.  And I think there's a proviso in our spacing that

13  the existing vertical development and non-horizontal

14  spacing units should coexist and run concurrently with

15  the proposed horizontal units that we are spacing,

16  Mississippian (less Chester)?

17  A.  Yes, I'm sure that's correct.

18  Q.  Okay.

19      THE COURT:  Who signed that order?

20      MR. HELM:  Your Honor, it was signed by the

21  Commissioners.  It was -- Keith Thomas was the

22  administrative law judge.

23      THE COURT:  Okay; thank you.

24  Q.  (Mr. Helm continues) And does Gastar own interest

25  in the EM Bollenbach #1?

CONFIDENTIAL                           CRAWLEY 000269

rdh-44

1   A.   Yes.

2   Q.   And then would you be -- would your position in

3   that well be a non-operator in the EM Bollenbach #1?

4   A.   Correct.

5   Q.   Okay.  And Crawley would be the operator, and again

6   it's pursuant to the JOA that covers the lands that you

7   described?

8   A.   Yes.

9   Q.   Okay.  And I know that you represented that you

10  were of the opinion that the JOA, while covering the

11  lands described, there may have been an expiration of

12  an oil and gas lease within the JOA area?

13  A.   Yes.

14  Q.   And where did you describe that as being located?

15  A.   The southeast quarter.

16  Q.   Okay.  Is that where there was a well producing at

17  one time, the Eloise #1?

18  A.   Yes.  I believe that's the name of the well, yes.

19  Q.   Okay.  And did you say something to the affect that

20  that initial well might have been producing on a

21  leasehold basis at one time?

22  A.   I believe the Crawley well was unspaced, and so

23  that would make it produce on a leasehold basis.

24  Q.   Okay.  So you were referring to the

25  EM Bollenbach #1?

OKLAHOMA CORPORATION COMMISSION – OFFICIAL TRANSCRIPT

CONFIDENTIAL                                CRAWLEY 000270

rdh-45

1    A.    Yes.

2    Q.    Okay.    I misunderstood.    And you represented that

3    there may have been a new lease taken within the JOA --

4    confines of the JOA area by Gastar more recently?

5    A.    Yes, there was one.

6    Q.    And what was the date of that?

7    A.    February 5th, 2016.

8    Q.    All right.    We'll have a witness and I'm sure

9    you're familiar with our land witness.    But Crawley's

10    obtained legal opinions that suggest that the southeast

11    quarter is still included from two different law firms.

12    But you would differ with that opinion?

13              MR. HIRSCH:    I'll object.    Mr. Helm can't

14    testify as to legal matters.    If he wants to ask his

15    witness that, that's fine.

16              MR. HELM:    Okay.

17              THE COURT:    All right.

18              MR. HELM:    We'll take it up with --

19              THE COURT:    So you withdraw the question?

20              MR. HELM:    -- with our witness.

21    Q.    (Mr. Helm continues) But you would confirm that

22    you've not had a legal opinion, with regard to your

23    opinion, that maybe the lease was no longer covered by

24    the JOA?

25    A.    I have not written a legal opinion, correct.

OKLAHOMA CORPORATION COMMISSION – OFFICIAL TRANSCRIPT

CONFIDENTIAL

CRAWLEY 000271

rdh-46

1  Q.   Okay.  All right, sir.  When you proposed -- when

2  your company proposed the well that's referred to on

3  Exhibit No. 1 -- do you have a copy of that?  And

4  Mr. Elliot, I think it's the February 8th.

5  A.   Yes.

6  Q.   Okay.

7          THE COURT:  Quick question.  How many acres

8  would that southeast quarter lease be?

9  Q.   (Mr. Helm continues) I guess, for the record, we

10 should probably describe that, Mr. Elliot.  Do you

11 believe that would be the entire southwest quarter,

12 less and except the 40 acres in the northwest

13 southwest?

14 A.   For the -- for the JOA?

15 Q.   Yes, for the JOA.

16 A.   Yes.

17          THE COURT:  Can you say that again, please?

18          MR. HELM:  Yes.  It would be entire south half

19 of Section 8, less and except the 40 acres in the

20 northwest of the southwest, which is 280 acres I

21 believe?

22          THE WITNESS:  Yes.

23          MR. HELM:  Your Honor, that would be 280 acres

24 illustrated --

25          THE COURT:  Okay.

OKLAHOMA CORPORATION COMMISSION – OFFICIAL TRANSCRIPT

CONFIDENTIAL

CRAWLEY 000272

BEFORE THE CORPORATION COMMISSION
OF THE STATE OF OKLAHOMA

| | | |
|---|---|---|
| APPLICANT: | GASTAR EXPLORATION INC. | ) |
| | | ) CAUSE CD NO. |
| RELIEF SOUGHT: | **POOLING** | ) |
| | | ) 201702100 |
| LEGAL DESCRIPTION: | SECTION 8, | ) |
| | TOWNSHIP 18 NORTH, | ) |
| | RANGE 8 WEST, | ) |
| | KINGFISHER COUNTY, OKLAHOMA | ) |
| | | ) |
| APPLICANT: | CRAWLEY PETROLEUM CORPORATION | ) ) |
| | | ) CAUSE CD NO. |
| RELIEF SOUGHT: | **POOLING** | ) . |
| | | ) 201702711 |
| LEGAL DESCRIPTION: | SECTION 8, | ) |
| | TOWNSHIP 18 NORTH, | ) ORDER NO. |
| | RANGE 8 WEST, | ) |
| | KINGFISHER COUNTY, OKLAHOMA | ) **668071** |

## ORDER OF THE COMMISSION

This cause came on for hearing before an Administrative Law Judge for the Corporation Commission of Oklahoma on July 26 and 27, 2017, in the Commission Courtroom, Jim Thorpe Building, Oklahoma City, Oklahoma, pursuant to notice given as required by law and the Rules of the Commission for the purpose of hearing, taking testimony and reporting the findings and recommendations to the Commission.

Karl F. Hirsch, attorney, appeared for Gastar Exploration Inc.; Charles L. Helm, attorney, appeared for Crawley Petroleum Corporation; and, Chris R. Thompson, appeared pro se for Viersen Oil & Gas Co.

The Administrative Law Judge heard the cause and filed a report with the Commission, which report has been considered, and the Commission, therefore, finds as follows:

## FINDINGS

1.     These are the Applications of Gastar Exploration Inc. and Crawley Petroleum Corporation for an order pooling interests and adjudicating rights and equities of oil and gas owners in the Mississippian (less Chester), Woodford and Hunton common sources of supply (Cause CD No. 201702100) and in the Big Lime-Oswego, Mississippian, Woodford and Meisner-Hunton common sources of supply (Cause CD No. 201702711) underlying Section 8, Township 18 North, Range 8 West, Kingfisher County, Oklahoma. Order No. 666226 created 640-acre drilling and spacing units for the Mississippian (less Chester) and Woodford common sources of supply. The Application in Cause CD No. 201702100 was amended to dismiss the Hunton common source of supply and the Application in Cause CD No. 201702711 was

This document was retrieved from imagesilo.com. It is the intellectual property of Purpose, Inc. Duplication of this document by anyone other than a licensed ImageSilo.com customer is prohibited.

EXHIBIT
**16**

GASTAR-00135

APPLICANTS: GASTAR EXPLORATION INC | CAUSE CD NO.: 201702100
CRAWLEY PETROLEUM CORPORATION | CAUSE CD NO. 201702711
ORDER
PAGE 2

amended to dismiss the Big Lime-Oswego and Misener-Hunton common sources of supply and to amend the nomenclature from Mississippian to Mississippian (less Chester).

2.     At the time of the hearing, the Application in Cause CD No. 20172100 was amended to delete respondent #8, Enex Program I Partners, LP and respondent #12, Horizon Gas Partners, LP.

3.     Notice has been given as required and the Commission has jurisdiction of the subject and the persons. The Commission conducted an adjudicative inquiry into the sufficiency of the search to ascertain the whereabouts of the parties entitled to notice and upon the adjudicative inquiry into the factual issue of due diligence, the Commission finds that a meaningful search of all reasonably available sources at hand was conducted. Furthermore, after examining the record herein, including the notice by publication, affidavits of publication and affidavits of mailing, the Commission finds the process to be proper and that notice has been given in all respects as required by law and the Rules of the Commission.

4.     Applicants are the owners of the right to drill wells on said drilling and spacing unit and to develop and produce said common sources of supply, have made a bona fide effort to reach an agreement with all of the other such owners in such drilling and spacing unit, as set forth on Exhibit "A", to pool their interests and to develop the drilling and spacing unit and common sources of supply as a unit, and the Commission should issue an order requiring such owners to pool and develop the drilling and spacing unit and common sources of supply covered hereby as a unit.

5.     Gastar Exploration Inc. and Crawley Petroleum Corporation propose to drill a well in Section 8, Township 18 North, Range 8 West, Kingfisher County, Oklahoma, to a depth sufficient to test the Mississippian (less Chester) and Woodford common sources of supply, and that to protect correlative rights, all owners should be required to pool and develop the unit and common sources of supply covered hereby as a unit, upon the terms and conditions set out in "Order" below, all of which are found hereby, after a consideration of the substantial evidence in this cause, to be just and reasonable and will afford each owner in the unit the opportunity to recover or receive without unnecessary expense his just and fair share of the production from the unit.

6.     In the interest of the prevention of waste and the protection of correlative rights, these Applications should be granted, and the rights of all owners pooled and adjudicated.

## ORDER

IT IS THEREFORE ORDERED by the Corporation Commission of Oklahoma as follows:

1.     Gastar Exploration Inc. and Crawley Petroleum Corporation propose to drill a well in Section 8, Township 18 North, Range 8 West, Kingfisher County, Oklahoma, a horizontal well drilling and spacing unit for the Mississippian (less Chester) and Woodford

This document was reviewed from inspection files. It is the intellectual property of Gastar, Inc. Disclosure of this content by unauthorized third parties and/or distribution or posting of this material is prohibited.

APPLICANTS: GASTAR EXPLORATION INC. | CAUSE CD NO.: 201702100
CRAWLEY PETROLEUM CORPORATION | CAUSE CD NO. 201702711
ORDER
PAGE 3

common sources of supply, and to develop said unit and the common sources of supply thereunder as a unit, and the rights and equities of all oil and gas owners covered hereby are pooled, adjudicated and determined.

2a.    Estimated well costs are:

Completed as a dryhole:        $1,392,180.00
Completed for production:      $3,952,430.00

2b.    **$3,100.00 per acre cash bonus and a total 1/8 royalty.** $3,100.00 per acre, in addition to the statutory 1/8th royalty, is a fair, reasonable and equitable consideration to be paid unto each owner who elects not to participate in said well by paying such owner's proportionate part of the costs thereof; such cash bonus should be satisfaction in full for all rights and interests of such owner in the well and unit covered thereby, except for any normal 1/8th royalty interest as defined in 52 O.S. § 87.1(e); provided, that any party unable to deliver a 7/8th interest shall be required to elect one of the following options or to participate in the drilling of the well;

2c.    **$3,000.00 per acre cash bonus and a total 3/16 royalty.** $3,000.00 per acre, plus a proportionate share of an overriding or excess royalty of 1/16th of 8/8ths, in addition to the statutory 1/8 royalty, is a fair, reasonable and equitable consideration to be paid unto each owner who elects not to participate in said well by paying such owner's proportionate part of the costs thereof; such cash bonus and overriding or excess royalty should be satisfaction in full for all rights and interests of such owner in the well and unit covered hereby, except for any normal 1/8th royalty interest as defined in 52 O.S. § 87.1(e); provided, that any party unable to deliver a 13/16th interest shall be required to elect the following option or to participate in the drilling of the well;

2d.    **$2,500.00 per acre cash bonus and a total 1/5 royalty.** $2,500.00 per acre, plus a proportionate share of an overriding or excess royalty of 7.5% of 8/8ths, in addition to the statutory 1/8 royalty, is a fair, reasonable and equitable consideration to be paid unto each owner who elects not to participate in said well by paying such owner's proportionate part of the costs thereof; such cash bonus and overriding or excess royalty should be satisfaction in full for all rights and interests of such owner in the well and unit covered hereby, except for any normal 1/8th royalty interest as defined in 52 O.S. § 87.1(e); provided, that any party unable to deliver a 4/5th interest shall be required to elect the following option or participate in the drilling of the well;

2e.    **$10.00 cash bonus and a total 1/4 royalty.** $10.00, plus a proportionate share of an overriding or excess royalty of 1/8 of 8/8ths, in addition to the statutory 1/8 royalty, is a fair, reasonable and equitable consideration to be paid unto each owner who elects not to participate in said well by paying such owner's proportionate part of the costs thereof; such overriding or excess royalty should be satisfaction in full for all rights and interests of such owner in the well and unit covered hereby, except the normal 1/8th royalty interest as defined in 52 O.S. § 87.1(e).

APPLICANTS: GASTAR EXPLORATION INC. | CAUSE CD NO.: 201702100
CRAWLEY PETROLEUM CORPORATION | CAUSE CD NO. 201702711
ORDER
PAGE 4

Provided, however, in the event the oil and gas interests of any owner is subject to any royalty, overriding royalty or other payments out of production which create a burden on such interests in excess of the normal 1/8th royalty defined above, then such excess royalty, overriding royalty or other payment out of production should be charged against the overriding royalty as herein above set forth, and the same should be reduced by the amount of any such excess.

3.    Any owner of the right to drill in said drilling and spacing unit who has not agreed with Operator to develop said unit and common sources of supply shall be afforded the following election as to all or any portion of said owner's interest:

3a.    To participate in the development of the unit and common sources of supply by agreeing to pay such owner's proportionate part of the actual costs of the well covered hereby, and by paying, as set out herein, to Operator, such owner's proportionate part of the estimated completed for production costs thereof as set out in paragraph 2a above, or by securing or furnishing security for such payment satisfactory to Operator; in all events, such owner's cost in said well should not exceed his proportionate part of the actual or reasonable costs thereof which should be determined by the Commission in the event there is a dispute as to such costs; the payment of such owner's proportionate part of the estimated costs of said well, or the securing of such costs or the furnishing of security therefore, as aforesaid, should be accomplished as follows: Operator shall provide to all owners who have timely elected to participate a notice of intent to spud no earlier than 30 days prior to the intended spud date and said owners shall have 10 days from the date of said notice to pay such owner's proportionate part of the estimated completed for production well costs to Operator or make other satisfactory arrangements with Operator for the payment of said costs; such owner's proportionate part of the costs of and the production from such well and unit to be in proportion to the number of acres such owner has in the unit; or

3b.    To receive the cash bonus, plus share of production as set out in paragraph 2b above, which cash bonus shall be paid or tendered by Operator, if same can be paid or tendered, within 35 days from the date of this order; or

3c.    To receive the cash bonus, plus share of production as set out in paragraph 2c above, which cash bonus shall be paid or tendered by Operator, if same can be paid or tendered, within 35 days from the date of this order; or

3d.    To receive the cash bonus, plus share of production as set out in paragraph 2d above, which cash bonus shall be paid or tendered by Applicant, if same can be paid or tendered, within 35 days from the date of this order; or

3e.    To receive the cash bonus, plus share of production as set out in paragraph 2e above, which cash bonus shall be paid or tendered by Applicant, if same can be paid or tendered, within 35 days from the date of this order.

This document was retrieved from PacerMonitor.com. It is the intellectual property of PacerMonitor, Inc. Reproduction or any distribution by anyone other than the intended recipient is strictly prohibited without the express written consent of PacerMonitor, Inc.

GASTAR-00138

APPLICANTS: GASTAR EXPLORATION INC. | CAUSE CD NO.: 201702100
CRAWLEY PETROLEUM CORPORATION | CAUSE CD NO. 201702711
ORDER
PAGE 5

Provided, however, prior to the payment of bonus consideration and/or royalty to a respondent, said respondent must complete and furnish to Operator a Federal Form W-9. If a respondent does not provide Operator with a Federal Form W-9, Operator may pay their bonus consideration and/or royalty into an escrow account until such time as the appropriate Form W-9 has been furnished.

4.    Each owner of the right to drill in said drilling and spacing unit to said common sources of supply covered hereby who has not agreed to develop said unit as a unit, other than Operator, should be required to select which of the alternatives set out in paragraph 3 above, such owner accepts, in writing, within twenty (20) days from the date of this order; in the event any owner fails to elect in the time and in the manner as set out above, which of the alternatives set forth in paragraph 3 above any such owner accepts, then such owner shall be deemed to have accepted the cash bonus, plus the share of production, as set out in paragraph 2b above; in the event any owner elects to participate in the well or unit covered hereby, but fails to pay such owner's proportionate part of the estimated well costs in the time and in the manner as set forth in this order, then such owner shall be deemed to have accepted the cash bonus, plus the share of production, as set out in paragraph 2b above; if an owner so fails to elect, or having elected to participate fails to timely pay its share of the well costs, all as set forth herein, and if that owner's interest is subject to any royalty, overriding royalty or other payments out of production which create a burden on such interest in excess of the normal 1/8th royalty provided in paragraph 2b above, then such owner shall be deemed to have accepted the option set forth in paragraph 2c above; if an owner so fails to elect, or having elected to participate fails to timely pay its share of the well costs, all as set forth herein, and if that owner's interest is subject to any royalty, overriding royalty or other payments out of production which create a burden on such interest in excess of the normal 1/8th royalty plus overriding or excess royalty provided in paragraph 2c above, then such owner shall be deemed to have accepted the option set forth in paragraph 2d above; if an owner so fails to elect, or having elected to participate fails to timely pay its share of the well costs, all as set forth herein, and if that owner's interest is subject to any royalty, overriding royalty or other payments out of production which create a burden on such interest in excess of the normal 1/8th royalty plus overriding or excess royalty provided in paragraph 2d above, then such owner shall be deemed to have accepted the option set forth in paragraph 2e above; in the event any owner elects to do other than participate in said well by paying his proportionate share of the costs thereof, or fails to make an election provided above, or having elected to participate fails to pay such owner's proportionate part of the completed for production well costs as provided herein, such owner shall be deemed to have relinquished unto Applicant all of such owner's right, title, interest or claim in and to the well and unit, except for any normal 1/8th royalty interest, defined above, or other share in production to which such owner may be entitled by reason of an election hereunder.

5.    Only those owners electing to participate in the initial well drilled hereunder will be allowed to participate in subsequent wells drilled on the drilling and spacing unit and common sources of supply covered hereby. Substitute wells and sidetracking shall not be considered subsequent wells. Owners electing or deemed to have elected the cash consideration plus excess

royalty provided in paragraphs 2b, 2c, 2d or 2e above, for the initial well shall thereafter receive no additional cash consideration for subsequent wells, but shall receive the royalty it originally elected to receive or was deemed to have elected to receive.

6.    In the event an owner with the right to participate in subsequent wells proposes a subsequent well, said owner shall notify by certified mail those other owners who elected to participate in all prior operations hereunder of its intended subsequent well and said owners will have twenty (20) days from the receipt of said notice to elect whether to participate in said subsequent well or elect one of the alternatives set forth in paragraph 2 above. The notice provided shall include an AFE describing the estimated costs of the subsequent well and owners electing to participate must pay, or make satisfactory arrangements with the Operator to secure the payment of their proportionate share of said completed well costs within twenty-five (25) days from the receipt of said notice. Those owners failing to elect within the period provided or those owners electing to participate but failing to pay their share of costs within the period provided shall be deemed to have elected not to participate in the subsequent operation and shall receive the option set forth in paragraph 2 above consisting of the highest cash bonus for which such owner's interest qualifies depending on the excess burdens attached to such interest. If any cash bonus is due and payable by reason of an election or deemed election under this paragraph, said cash bonus shall be paid or tendered by Operator within thirty-five (35) days from the date of said notice. Anytime an owner elects or is deemed to have elected not to participate in a subsequent operation, then that owner shall not be allowed to participate in future operations on the drilling and spacing units covered thereby provided a subsequent well is timely commenced as described in this Order. The Commission shall retain jurisdiction over a dispute arising over the costs of any subsequent operation. Any proposal made under this provision shall expire after one hundred and eighty (180) days if the subsequent operation has not been commenced and the parties shall be placed in the position they were prior to the proposal as if the proposal had never been made.

7.    Operator, in addition to any other rights provided herein, shall have a lien as set out in 52 O.S. § 87.1(e) on the interest of any owner, subject to this order, who has elected to participate in the well covered hereby by paying such owner's proportionate part of the costs thereof.

8.    If any payment of bonus, royalty payments or other payments due and owing under this order cannot be made because the person entitled thereto cannot be located or is unknown, then said bonus, royalty payments or other payments shall be paid into an escrow account within ninety (90) days after this order and shall not be commingled with any funds of Operator. Provided, however, that the Commission shall retain jurisdiction to grant to financially solid and stable holders an exception to the requirement that such funds be paid into an escrow account and permit such holder to escrow such funds within such holder's organization. Responsibility for filing reports with the Commission as required by law and Commission rule as to bonus, royalty or other payments escrowed hereunder shall be with the applicable holder. Such escrowed funds shall be held for the exclusive use of, and the sole benefit of, the person entitled

This document is a scanned reproduction. It is the intellectual property of Gastar, Inc. Copying of this document by any other means than a licensed reproduction authorized in person of this material is prohibited.

APPLICANTS: GASTAR EXPLORATION INC. | CAUSE CD NO.: 201702100
CRAWLEY PETROLEUM CORPORATION | CAUSE CD NO. 201702711
ORDER
PAGE 7

thereto. It shall be the responsibility of Operator to notify all other holders of this provision and of the Commission rules regarding unclaimed monies under pooling orders.

9.    Gastar Exploration Inc., 1331 Lamar, Suite 650, Houston, Texas 77010, an owner of the right to drill in said drilling and spacing unit, is designated Operator of the unit well and common sources of supply covered hereby and Crawley Petroleum Corporation, 105 N. Hudson, Suite 800, Oklahoma City, Oklahoma 73102, an owner of the right to drill in said drilling and spacing unit, is designated Alternate Operator of the unit well and common sources of supply covered hereby. Said Operator and Alternate Operator have current plugging bonds or financial statements on file with the Corporation Commission. In the event Gastar Exploration Inc. has not commenced operations for the drilling of the initial well by midnight, April 28, 2018, then Crawley Petroleum Corporation has the option to become the Alternate Operator under this order and if Crawley Petroleum Corporation timely commences operations under this order, then Crawley Petroleum Corporation shall continue to operate the well to completion and will operate subsequent wells in the unit. In addition, owners electing to participate and retaining the deferred payment of well costs provided in paragraph 3a above, including Gastar Exploration Inc. and/or Crawley Petroleum Corporation, will be notified as to whether the Operator or Alternate Operator will operate the initial well in the notice of intent to spud as required by the provisions of paragraph 3a above. If Crawley Petroleum Corporation exercises the option to become Alternate Operator, Gastar Exploration Inc. will make its election within 10 days of notice of the exercise of that option and pay its share of the completed well costs or make other arrangements with the Alternate Operator within the time periods set forth in Paragraph 3a above.

Gastar Exploration Inc., 1331 Lamar, Suite 650, Houston, Texas 77010, is designated as the party to whom all elections required in paragraph 4 hereof shall be communicated in writing as required in this Order. All written elections must be mailed and postmarked within the election period as set forth in paragraph 4. Payment of all costs required herein shall be made to Operator or Alternate Operator and payment of all bonuses, if any, required herein shall be made by Operator or Alternate Operator, depending on the provisions of this paragraph 9 above.

10.    Operator must commence operations for the drilling of the initial unit well within one year from the date of this order and to diligently prosecute the same to completion in a reasonably prudent manner or this order shall be null and void, except as to the payment of cash bonuses.

11.    Applicant, or its Attorney, shall file with the Secretary of the Commission within ten (10) days from the date of this order, an affidavit stating that a copy of this order was mailed within three (3) days from the date of this order to all parties pooled by this order whose addresses are known.

APPLICANTS: GASTAR EXPLORATION INC | CAUSE CD NO.: 201702100
CRAWLEY PETROLEUM CORPORATION | CAUSE CD NO. 201702711
ORDER
PAGE 8

12.    The relief requested is necessary to prevent or to assist in preventing the various types of waste of oil or gas prohibited by statute, or any of said wastes, and to protect or assist in protecting the correlative rights of interested parties.

CORPORATION COMMISSION OF OKLAHOMA

DANA L. MURPHY, CHAIRMAN

J. TODD HIETT, VICE CHAIRMAN

BOB ANTHONY, COMMISSIONER

DONE AND PERFORMED THIS ___12___ DAY OF ___Sept.___, 2017.

BY ORDER OF THE COMMISSION

PEGGY MITCHELL, Secretary

Approved: _____
          Karl F. Hirsch, OBA No. 4232

## REPORT OF THE ADMINISTRATIVE LAW JUDGE

The foregoing findings and Order are the report and recommendation of the Administrative Law Judge.

APPROVED:

_____         9-4-17
Andrew Dunn, Administrative Law Judge      Date

_____         9-05-17
Reviewer                                   Date

This document was retained from original reserves. It is the intellectual property of Pengwin Data Corporation, and this document is subject to their terms. Unauthorized use or data and compilation or retention of this materials is prohibited.

APPLICANTS: GASTAR EXPLORATION INC. | CAUSE CD NO.: 201702100
CRAWLEY PETROLEUM CORPORATION | CAUSE CD NO. 201702711
EXHIBIT "A" TO ORDER
PAGE 9

## GASTAR EXPLORATION INC.
## RESPONDENTS WITH KNOWN
## ADDRESSEES:

1.  Barbara Jane Craun
    17637 E. 670 Rd.
    Hennessey, OK 73742

2.  Black Stone Natural Resources III-B
    1001 Fannin, Ste. 2020
    Houston, TX 77002

3.  BSNR III, Inc.
    1001 Fannin, Ste. 2020
    Houston, TX 77002

4.  Carl E. Gungoll Exploration, LLC
    P.O. Box 18466
    Oklahoma City, OK 73154

5.  Cecil Don Lane
    3034 County Street 2890
    Ninnekah, OK 73067

6.  Consolidated Oil and Gas, LLC
    1660 17th Street, Ste. 325
    Denver, CO 80202

7.  Crawley Petroleum Corporation
    105 N. Hudson Ave., Ste. 800
    Oklahoma City, OK 73102

8.  Enex Program I Partners, LP
    One Kingwood Place, Ste. 205
    Kingwood, TX 77339
    DISMISSED

9.  Foster Resources, LLC
    2604 NW 58th Place
    Oklahoma City, OK 73112

10. H.I.K. Corporation for itself and as
    successor by merger to H.P.K.
    Corporation
    12601 Oakdale Forest Ct.
    Edmond, Oklahoma 73013

11. Henry Gungoll Associates, LLC
    P.O. Box 6209
    Enid, OK 73702-6209

12. Horizon Gas Partners, LP
    2512 E. 71st St. Suite C
    Tulsa, OK 74136
    DISMISSED

13. Sally Jean Mays
    4508 SE Harrison Street
    Milwaukie, OR 97222

14. Southwestern Energy Production
    Company
    10000 Energy Drive
    Spring, TX 77389

15. Sun-Key Oil Company
    P.O. Box 101
    Dublin, TX 76446

16. TLW Partners, LP
    1001 Fannin, Ste. 2020
    Houston, TX 77002

17. Viersen Oil & Gas Co.
    P.O. Box 702708
    Tulsa, OK 74170

This document was retrieved from OccRecords.com. It is the intellectual property of Request Info Solutions or whomsoever. Please contact OccRecords.com for a detailed or denial of this document or prohibited.

APPLICANTS: GASTAR EXPLORATION INC. | CAUSE CD NO.: 201702100
CRAWLEY PETROLEUM CORPORATION | CAUSE CD NO. 201702711
EXHIBIT "A" TO ORDER
PAGE 10

18.    Ward-Gungoll Properties, LLC
       P.O. Box 1187
       Enid, OK 73702

19.    Warwick-Jupiter, LLC
       6608 N. Western
       Box 417
       Oklahoma City, OK 73116

**CRAWLEY PETROLEUM
CORPORATION
RESPONDENTS WITH KNOWN
ADDRESSEES:**

1.    ADW Production, LLC
      P.O. Box 313
      Avondale, CO 81022-0313

2.    BC Productions, LLC
      c/o Phillip Choate
      5722 Covey Run Dr.
      Edmond, OK 73034

3.    Bromiley Oil, LLC
      8564 Heather Dr.
      Burr Ridge, IL 60527-6372

4.    Danial Investments, LP
      6211 W. Northwest Hwy., Ste. C256
      Dallas, TX 75225-3477

5.    D'Ayree Investments, LLC
      c/o Denise Ayree Ruhl Beatty
      8900 Elk Aly
      Guthrie, OK 73044-8161

6.    Gastar Exploration USA, Inc.
      1331 Lamar, Suite 650
      Houston, TX 77010

7.    Gastar Exploration, Inc.
      1331 Lamar, Suite 650
      Houston, TX 77010

8.    GKK Husky, LLC
      500 Commerce Street, Suite 700
      Fort Worth, TX 76102-5478

9.    Gungoll Production, LLC
      c/o Carl E. Gungoll Exploration, Inc.
      6 NE 63rd St., Suite 300
      Oklahoma City, OK 73105

10.   Henry H. Gungoll Associates, LLC
      P.O. Box 1422
      Enid, OK 73702-1422

11.   Henry H. Gungoll Associates, LLC
      2208 W. Willow Road
      Enid, OK 73703-2405

12.   Husky Oklahoma, LLC
      604 East 4th Street, Suite 201
      Fort Worth, TX 76102-4074

13.   Jan A. Choate and Judson Choate,
      Co-Trustees of the R.J.C. Family
      Revocable Trust Agreement dated
      January 31, 2012
      14813 Hollyhock Drive
      Oklahoma City, OK 73142-1829

14.   John B. Kleinhienz
      301 Commerce Street, Suite 1900
      Fort Worth, TX 76102-4155

GASTAR-00144

APPLICANTS: GASTAR EXPLORATION INC. | CAUSE CD NO.: 201702100
CRAWLEY PETROLEUM CORPORATION | CAUSE CD NO. 201702711
EXHIBIT "A" TO ORDER
PAGE 11

15. John Brusseau
1833 North Lake Trail
Denton, TX 76201-0614

16. Lucas Brusseau
1833 North Lake Trail
Denton, TX 76201-0614

17. Massey Oil and Gas, Ltd.
P.O. Box 6639
Abilene, TX 79608

18. N. Vest, LLC
1302 Kremer Dr. #2
Bayfield, CO 81122-9817

19. Oljeinvest, LLC
1717 Main St., Suite 2400
Dallas, TX 75201-7363

20. Red Plains Resources, LLC
10302 Chapel Court
Missouri City, TX 77459

21. Schlachter Oil and Gas, Ltd
6211 W. Northwest Hwy.,
Ste. C-256
Dallas, TX 75225-3477

22. Strong Oil & Gas, Ltd.
801 Cherry Street, Unit 30
Fort Worth, TX 76102-6881

23. Sun-Key Oil Company
P.O. Box 101
Dublin, TX 76446-0101

24. Viersen Oil & Gas Co.
Attn: JJ Chisholm
P.O. Box 702708
Tulsa, OK 74170-2708

25. Ward-Gungoll Properties, LLC
P.O. Box 1187
Enid, OK 73702

26. *Linda Sue Payne
809 E. Mosier
Norman, OK 73701

27. *Estate of Daniel Leroy Craun,
Deceased
Barbara Jane Craun, Personal
Representative
17637 E. 670 Road
Hennessey, OK 73742-7448

*Respondents for curative purposes

RESPONDENTS WITH UNKNOWN
OR UNLOCATABLE ADDRESSES
(with last known addresses if available):

None.

And if any of the above are deceased or no
longer in business, their unknown heirs,
devisees, executors, administrators, trustees,
successors and assigns, immediate and
remote.

GASTAR-00145





OCT 1 1 2017

CRAWLEY

October 10, 2017

Crawley Petroleum Corporation
105 N. Hudson, Suite 800
Oklahoma City, OK 73102

Re:    Spud Notice - Yogi 1808 8-1UOH   (137216-01)
       Section 8-18N-08W, Kingfisher County, Oklahoma

Dear Working Interest Owner,

Gastar Exploration Inc. ("Gastar") plans to spud the Yogi 1808 8-1UOH well within the next 30
days. This well will be a horizontal lower Mississippian test with an estimated TVD of 8,300' and
TMD of 13,260'. The estimated drilling costs for the Yogi 1808 8-1UOH are $1,392,180.00 and
the total completed well costs are $3,952,430.00. A copy of Gastar's Authority for Expenditure
("AFE") is enclosed. This well will be drilled from the SE/4 of Section 5-18N-08W, Kingfisher
County, Oklahoma with a bottom hole located in the SE/4 of Section 8-18N-08W, Kingfisher
County, Oklahoma. Please be advised that Gastar hereby notifies Crawley Petroleum Corporation
("Crawley") of our spud of the Yogi 1808 8-1UOH well.

Gastar credits Crawley owning approximately 150.33056 net acres for a working interest of
23.48915%. Please provide Crawley's proportionate share of the well costs, being $928,392.21,
within the next 10 days or execute the pre-pooling letter agreement so that Crawley can be billed
monthly via joint interest billings.

In the spirit of cooperation, Gastar agrees to provide Crawley the opportunity to change or modify
its previous election. Please review the options and indicate your election in the space provided
for below and return to our attention within 20 days from receipt.

Should you have any questions, please contact the undersigned at (713) 456-7103 or
cgreer@gastar.com.

Respectfully,

GASTAR EXPLORATION INC.

Cullen C. Greer
Landman

Gastar Exploration Inc.
1331 Lamar, Suite 650 • Houston, TX 77010
Phone: (713) 739-1800 • Fax: (713) 739-0458



EXHIBIT

1 I

Spud Notice - Yogi 1808 8-1UOH
Section 8-18N-08W, Kingfisher County, Oklahoma

**Crawley Petroleum Corporation**

_____We hereby elect to participate with our FULL interest in the Yogi 1808 8-1UOH well.

_____We hereby elect **NOT** to participate with our interest in the Yogi 1808 8-1UOH well.

AGREED TO AND ACCEPTED THIS \_\_\_\_\_DAY OF _____ 2017.

**Crawley Petroleum Corporation**


_____

Printed Name: _____

Title: _____

**CONFIDENTIAL**

RECEIVED

NOV 1 6 2017

CRAWLEY



# CASILLAS

PETROLEUM RESOURCE PARTNERS, LLC

**CERTIFIED RETURN RECEIPT**

November 13, 2017

101 Energy Corporation
105 N. Hudson Ave. Ste. 850
Oklahoma City, OK 73102

Re:     Well Proposal – Culebra 1-10-15WXH
        Section 10 & Section 15-4N-4W
        Garvin County, OK

Dear Sir or Madam:

Casillas Petroleum Resource Partners, LLC, and its agent, Casillas Operating, LLC (collectively, "Casillas"), hereby propose the drilling of a horizontal well to test the Woodford formation and any other potentially productive formations under the above referenced lands. The proposed well will have a true vertical depth of approximately 9,375 feet and a measured depth of approximately 19,075 feet. The well will be drilled from a surface location in the SE/4 of Section 3-4N-4W and extend southward across Section 10-4N-4W. The terminus (bottom hole location) will be in the SW/4 of Section 15-4N-4W. The total length of the completed interval for the proposed well is 9,500 feet with an estimated dry hole cost of $3,118,260 and an estimated completed well cost of $9,186,744, as set forth on the enclosed AFE.

Our records reflect that you may own an interest in the referenced lands. Please elect one (1) of the following options by placing your initials next to the desired option, executing a copy of this letter in the space provided below and returning a copy in the pre-addressed envelope. Your prompt attention to this matter is appreciated.

| Initial Here | Options |
|---|---|
| _(initialed)_ | 1. Participate in the proposed test well by paying your proportionate share of the completed well costs. ***In the event that you elect to participate under this letter, you must also elect in writing to participate pursuant to the terms of the Pooling Order to issue or your election to participate WILL NOT be valid.*** |
| _____ | 2. Lease or assign your interest to Casillas for a bonus consideration of $4,000.00 per net acre with a 1/8th royalty, delivering to Casillas an 87.50% net revenue interest. |
| _____ | 3. Lease or assign your interest to Casillas for a bonus consideration of $3,500.00 per net acre with a 3/16ths royalty, delivering to Casillas an 81.25% net revenue interest. |
| _____ | 4. Lease or assign your interest to Casillas for a bonus consideration of $3,000.00 per net acre with a 1/5th royalty, delivering to Casillas an 80.00% net revenue interest. |
| _____ | 5. Lease or assign your interest to Casillas for a bonus consideration of $500.00 per net acre with a 1/4th royalty, delivering to Casillas a 75.00% net revenue interest. |



tabbies

EXHIBIT
1.5

Well Proposal – Culebra 1-10-15WXH
Section 10 & Section 15-4N-4W, Garvin County, OK

This offer is subject to verification of title and the negotiation of a mutually acceptable lease or assignment form providing for the delivery of a primary term of three (3) years and all depths, and may be withdrawn at any time and without prior notice. Upon receipt of your signed offer we will promptly have one of our acquisition agents contact you to facilitate further.

Casillas anticipates filing horizontal spacing, location exception, multi-unit and pooling applications with the Oklahoma Corporation Commission in the near future to facilitate the drilling of this well. Additionally, we recognize that a portion of our mutual interest in the captioned lands may be subject to one or more Joint Operating Agreements dated as follows:

| Section 10-4N-4W | Section 15-4N-4W |
|---|---|
| September 1, 1989 (NW/4) | September 20, 1985 (NW/4) |
| September 1, 1989 (NE/4) | July 23, 1993 (NW/4) |
| June 1, 1988 (SW/4) | April 1, 1987 (NE/4) |

In such event, please consider this proposal to be made pursuant to said JOAs as may be applicable and advise in writing whether you wish to continue to be covered under the applicable JOA(s) or the OCC pooling order to issue. If you do not wish to be covered under the OCC pooling order then we will dismiss you from the pooling provided all of your interest is subject to at least one valid, subsisting JOA.

  If you have questions regarding this well proposal or your ownership, please contact **Alan Holsted** at **(405) 841-7600** or **aholsted@osageoilandgas.com**.

Very truly yours,

**Casillas Petroleum Resource Partners, LLC**
**Casillas Operating, LLC**

Sam M. Sadler
Landman

---

**101 Energy Corporation**

AGREED TO AND ACCEPTED this ___7TH___ day of ___DECEMBER___, 2017.

Signed: _____

Printed Name: _____ S.K. Hatfield _____

Title: _____ President _____

_**Please be sure to return both pages of this letter in the enclosed pre-addressed envelope.**_

| LEASE NAME: | | | Culebra 1-10-15-WXH | | | | | | |
|---|---|---|---|---|---|---|---|---|---|

| PROJECT: | Drill and complete a 9,500' HZ well in the Woodford. | | | FIELD: | SCOOP | TVD: | 9,375 | CASILLAS | |
|---|---|---|---|---|---|---|---|---|---|
| AFE DATE: | 11/13/17 | SHL: | SE/4 Sec. 3 4N-4W | AFE: | TBD | MD: | 19,075 | | |
| COUNTY: | Garvin OK | BHL: | SE/4 Sec. 15 4N-4W | Property: | TBD | LOL: | 9,500 | | |

| INTANGIBLES | | | | | Drilling | | Completions | | Facilities | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | Cost | Code | Cost | Codes | Cost | Completed Well Cost |
| Mobilization | | | | 9100 | $174,375 | | | | | $174,375 |
| Drilling/Completion - Day Work | 24.1 | Days @ | $17,500 | /day | 9102 | $432,591 | | | | | $432,591 |
| Directional Tools | | | | 9104 | $214,155 | | | | | $214,155 |
| Pulling Unit | | | | | | 9205 | $70,000 | 9205 | $18,000 | $88,000 |
| Contract Labor | | | | | | 9206 | $18,900 | 9206 | $4,750 | $23,650 |
| Surveys / Permits / Bonds | | | | 9107 | $5,000 | 9207 | | 9207 | $2,500 | $7,500 |
| Cementing & Services | | | | 9108 | $115,000 | 9208 | | 9208 | | $115,000 |
| Mud /Chemicals/Water | | | | 9109 | $431,020 | 9209 | $357,500 | 9209 | $1,500 | $790,020 |
| Frac Tank Rental | | | | | | 9211 | $10,740 | | | $10,740 |
| Roads & Location | | | | 9111 | $125,000 | | | | | $125,000 |
| Surface Equipment Rental | | | | 9132 | $17,386 | 9212 | $30,868 | 9212 | | $48,254 |
| Open Hole Logging | | | | 9113 | $0 | | | | | |
| Acidizing & Fracturing | | | | | | 9214 | $3,617,500 | 9214 | | $3,617,500 |
| Transportation | | | | | | 9215 | $21,850 | 9215 | $7,500 | $29,350 |
| Coring & Analysis | | | | 9116 | $0 | 9216 | | | | |
| Inspection / Testing | | | | 9117 | $11,500 | 9217 | $6,500 | 9217 | | $18,000 |
| Casing Crew / Tongs | | | | 9118 | $75,000 | 9218 | | 9218 | | $75,000 |
| Drill Bits | | | | 9119 | $127,500 | 9219 | | 9219 | | $127,500 |
| Insurance | | | | 9120 | $10,000 | 9220 | | 9220 | | $10,000 |
| Roustabout Services | | | | 9121 | $4,000 | 9221 | | 9221 | $45,000 | $49,000 |
| Consulting Services | | | | 9122 | $100,249 | 9230 | $171,763 | 9230 | $10,000 | $282,012 |
| Electricity | | | | | | 9223 | | 9223 | | |
| Fuel | | | | 9124 | $101,211 | 9224 | $385,000 | 9224 | | $486,211 |
| Perforating | | | | | | 9225 | | 9225 | | |
| Wireline Service | | | | 9126 | $0 | 9226 | $396,250 | 9226 | | $396,250 |
| Flow Testing | | | | | | 9227 | | 9227 | | |
| Engineering Service | | | | 9128 | $6,000 | 9228 | | 9228 | | $6,000 |
| Damages/Surface/Easements | | | | 9130 | $35,000 | 9200 | | 9200 | | $35,000 |
| Repairs and Maintenance | | | | | | 9231 | $7,900 | 9231 | | $7,900 |
| Downhole Equipment Rental | | | | 9135 | $6,014 | 9233 | $36,700 | | | $42,714 |
| Hauling | | | | 9134 | $23,288 | | | | | $23,288 |
| Welding | | | | 9135 | $5,000 | 9235 | | 9235 | $2,500 | $7,500 |
| Pit Liner | | | | | | | | | | |
| Materials & Supplies | | | | 9137 | $2,406 | 9232 | | 9232 | $2,500 | $4,906 |
| Drilling Conductor | | | | 9138 | $15,000 | | | | | $15,000 |
| Saltwater Hauling & Disposal | | | | 9142 | $10,000 | 9242 | $42,075 | 9242 | $60,000 | $112,075 |
| Legal Expenses | | | | 9143 | $100,000 | 9222 | | | | $100,000 |
| Mud Logging | | | | 9144 | $20,126 | | | | | $20,126 |
| Cuttings Disposal | | | | 9146 | $120,988 | | | | | $120,988 |
| Fishing Tools | | | | 9148 | $0 | | | | | |
| BOP /Superchoke Rental/Pump/Pit/Swi | | | | 9150 | $7,264 | 9250 | $131,050 | 9250 | | $138,314 |
| Well/Mud-Monitoring Equipment | | | | 9151 | $13,332 | | | | | $13,332 |
| Water Well | | | | 9152 | $7,014 | | | | | $7,014 |
| Flowback Equipment/Personnel | | | | | | 9256 | $60,500 | 9256 | $60,000 | $120,500 |
| BOP Testing & Services | | | | 9157 | $5,000 | | | | | $5,000 |
| Base Operations | | | | 9163 | $34,869 | 9263 | $31,563 | 9263 | $0 | $66,432 |
| Solids Control Equipment | | | | 9166 | $60,144 | | | | | $60,144 |
| Pit Cleaning/Rig Washing | | | | 9167 | $20,000 | | | | | $20,000 |
| Overhead | | | | 9170 | $24,699 | | | | | $24,699 |
| Miscellaneous & Contingency | 5% | | | 9190 | $123,002 | 9290 | | 9290 | $4,775 | $127,777 |
| Coiled Tubing Rental | | | | | | 9252 | | 9252 | | |
| Crane Rental | | | | | | 9254 | $55,300 | 9254 | $3,500 | $58,800 |
| Snubbing Unit Rental | | | | | | 9240 | $73,500 | 9240 | | $73,500 |
| Hot Oil Treatments | | | | | | 9204 | | 9204 | | |
| Nitrogen | | | | | | 9258 | | 9258 | | |
| TOTAL INTANGIBLE COST | | | | | $2,383,035 | | $5,525,458 | | $222,525 | $8,331,019 |

| TANGIBLE - EQUIPMENT | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Tubulars | Size | Feet | $/Foot | | | | | | | |
| Surface Casing | 13-3/8" | 1,500 | $39.00 | 9301 | $58,500 | | | | | $58,500 |
| Intermediate Csg | 9-5/8" | | $0 | 9323 | $0 | | | | | |
| Long String Casing | 5-1/2" | 19,075 | $23.00 | 9302 | $381,725 | | | | | $381,725 |
| Liner | | | | 9314 | | | | | | |
| Tubing | 2-7/8" | 10,500 | $6.00 | | | 9303 | | 9301 | $63,000 | $63,000 |
| Rods | | | | | | 9378 | | 9378 | | |
| Wellhead Equipment | | | | 9304 | $40,000 | 9304 | $25,000 | 9304 | | $65,000 |
| Casing Accessories | | | | 9322 | $55,000 | 9322 | | 9304 | | $55,000 |
| Pumping Unit & Engine | | | | | | 9305 | | 9305 | | |
| Down Hole Pump | | | | | | 9306 | | 9306 | | |
| Tank Battery | | | | | | 9307 | | 9307 | $84,000 | $84,000 |
| Heater Treater/Separator | | | | | | 9308 | | 9308 | $57,500 | $57,500 |
| Dehydrator | | | | | | 9309 | | 9309 | | |
| Flowlines and Fittings | | | | | | 9310 | | 9310 | $42,500 | $42,500 |
| Compressor | | | | | | 9311 | | 9311 | | |
| Stock Tanks | | | | | | 9313 | | 9313 | | |
| Dike/Spill Containment | | | | | | 9315 | | 9315 | $15,000 | $15,000 |
| Gun Barrel | | | | | | 9316 | | 9316 | | |
| Submersible Pump | | | | | | 9317 | | 9317 | | |
| Subsurface Equipment | | | | | | 9318 | | 9318 | | |
| Equipment Salvage | | | | | | 9319 | | 9319 | | |
| Packer | | | | | | 9320 | | 9320 | | |
| Injection Pump | | | | | | 9321 | | 9321 | | |
| Gas Lift | | | | | | 9324 | | 9324 | $33,500 | $33,500 |
| Miscellaneous & Contingency | | | | | | 9390 | | 9390 | | |
| TOTAL TANGIBLE COST | | | | | $535,225 | | $25,000 | | $295,500 | $855,725 |

| TOTAL COST | | | | | $3,118,260 | | $5,550,459 | | $518,025 | $9,186,744 |

S.K. Hatfield



MAY **16** 2018

.CRAWLEY

**CASILLAS**

PETROLEUM RESOURCE PARTNERS, LLC

<u>**CERTIFIED RETURN RECEIPT**</u>

May 11, 2018

*EMAILED 6/6/18*
*JMO, JAG, PS, KJ, AP, DT, AC, LB, LK, LS, SG*

PDI, Inc.
105 N. Hudson, Suite 800
Oklahoma City, OK 73102

Re:    Well Proposal – Prairie 1-33-28WXH
       Sections 28 & 33-4N-4W
       Garvin County, OK

Dear Sir or Madam:

Casillas Petroleum Resource Partners, LLC, and its agent, Casillas Operating, LLC (collectively, "Casillas"), hereby propose the drilling of a multi-unit horizontal well to test the Woodford formation and any other potentially productive formations under the above referenced lands. The proposed well will have a true vertical depth of approximately 12,490 feet and a measured depth of approximately 19,123 feet. The well will be drilled from a surface location in the SW/4 SW/4 NW/4 of Section 33-4N-4W and extend northward across Sections 33-4N-4W and 28-4N-4W as follows:

       Section 33-4N-4W – 1,435 feet (22% of the completed interval length)
       Section 28-4N-4W – 5,115 feet (78% of the completed interval length)

The terminus (bottom hole location) will be in the NW/4 of Section 28-4N-4W. The total length of the completed interval for the proposed well is 6,550 feet with an estimated dry hole cost of $3,079,341 and an estimated completed well cost of $7,946,480, as set forth on the enclosed AFE. The estimated dry hole and completed well costs, as well as the proceeds from production, will be allocated to each section based on the proportion of completed interval that each section bears to the total completed interval in the well.

Our records reflect that you may own an interest in the referenced lands. In the event you do not wish to participate, we invite you to elect one (1) of the following options by placing your initials next to the desired option, executing a copy of this letter in the space provided below and returning a copy in the pre-addressed envelope.

<u>**Initial Here**</u>    <u>**Options**</u>

_____    1.  Lease or assign your interest to Casillas for a bonus consideration of $4,000.00 per net acre with a 1/8th royalty, delivering to Casillas an 87.50% net revenue interest.

_____    2.  Lease or assign your interest to Casillas for a bonus consideration of $3,500.00 per net acre with a 3/16ths royalty, delivering to Casillas an 81.25% net revenue interest.

_____    3.  Lease or assign your interest to Casillas for a bonus consideration of $3,000.00 per net acre with a 1/5th royalty, delivering to Casillas an 80.00% net revenue interest.

_____    4.  Lease or assign your interest to Casillas for a bonus consideration of $500.00 per net acre with a 1/4th royalty, delivering to Casillas a 75.00% net revenue interest.

EXHIBIT
K

tabbies

Well Proposal – Prairie 1-33-28WXH
Sections 28 & 33-4N-4W, Garvin County, OK

This offer is subject to verification of title and the negotiation of a mutually acceptable lease or assignment form providing for the delivery of a primary term of three (3) years and all depths, and may be withdrawn at any time. Upon receipt of your signed acceptance of this offer we will promptly have one of our acquisition agents contact you to facilitate further.

Casillas anticipates filing horizontal spacing, location exception, multi-unit and pooling applications with the Oklahoma Corporation Commission in the near future to facilitate the drilling of this well and further development of this unit, including the Sycamore and Hunton formations as (i) associated common sources of supply with the Woodford and (ii) separate individual target formations (separate elections for each formation will be allowed under the pooling orders to issue). Additionally, we recognize that a portion of our mutual interest in the captioned lands may be subject to one or more Joint Operating Agreements dated as follows:

**Section 28-4N-4W**

| | |
|---|---|
| June 15, 1993 (NE/4) | March 1, 1994 (NW/4) |
| July 22, 1993 (NW/4) | April 14, 1994 (NW/4) |

In such event, please consider this proposal to be made pursuant to said JOAs as may be applicable and advise in writing whether you wish to continue to be covered under the applicable JOA(s) or the OCC pooling order to issue. If you do not wish to be covered under the OCC pooling order then we will dismiss you from the pooling provided all of your interest is subject to at least one valid, subsisting JOA.

If you have questions regarding this well proposal or your ownership, please contact **Alan Holsted** at **(405) 841-7600** or aholsted@osageoilandgas.com.

Very truly yours,
**Casillas Petroleum Resource Partners, LLC**
**Casillas Operating, LLC**

Tony J. Cervi, CPL
Senior Land Advisor

---

**Section(s) 28-4N-4W**
**PDI, Inc.**

AGREED TO AND ACCEPTED this ___6 TH___ day of _____JUNE_____, 2018.

Signed: _____

Printed Name:_____S.K. Hatfield_____

Title:_____Vice President_____

_**Please be sure to return both pages of this letter in the enclosed pre-addressed envelope.**_

| LEASE NAME: | | | Prairie 1-33-28WXH | | | | | |
|---|---|---|---|---|---|---|---|---|
| PROJECT: | Drill and complete a 6,550' HZ well in the Woodford. | | | FIELD: | SCOOP | TVD: | 12,490 | |
| AFE DATE: | 3/19/18 | SHL: | W/2 Sec. 33-4N-4W | AFE #: | — | MD: | 19,123 | CASILLAS |
| COUNTY: | Garvin OK | BHL: | NW/4 Sec. 28-4N-4W | Property: | — | LOL: | 6,550 | |

| INTANGIBLES | Drilling Code | Drilling Cost | Completions Codes | Completions Cost | Facilities Codes | Facilities Cost | Completed Well Cost |
|---|---|---|---|---|---|---|---|
| Mobilization | 9100 | $87,188 | | | | | $87,188 |
| Drilling/Completion - Day Work  25.0 Days @ $17,500 /day | 9102 | $449,521 | | | | | $449,521 |
| Directional Tools | 9104 | $223,990 | | | | | $223,990 |
| Pulling Unit | | | 9205 | $60,000 | 9205 | $18,000 | $78,000 |
| Contract Labor | | | 9206 | $17,640 | 9206 | $10,000 | $27,640 |
| Surveys / Permits / Bonds | 9107 | $5,000 | 9207 | | 9207 | $2,500 | $7,500 |
| Cementing & Services | 9108 | $115,000 | 9208 | | 9208 | | $115,000 |
| Mud/Chemicals/Water | 9109 | $416,973 | 9209 | $272,750 | 9209 | | $689,723 |
| Frac Tank Rental | | | 9211 | $9,060 | | | $9,060 |
| Roads & Location | 9111 | $112,500 | | | | | $112,500 |
| Surface Equipment Rental | 9112 | $15,497 | 9212 | $26,838 | 9212 | | $42,335 |
| Open Hole Logging | 9113 | $0 | | | | | |
| Acidizing & Fracturing | | | 9214 | $2,719,125 | 9214 | | $2,719,125 |
| Transportation | | | 9215 | $21,850 | 9215 | $7,500 | $29,350 |
| Coring & Analysis | 9116 | $0 | | | | | |
| Inspection / Testing | 9117 | $11,500 | 9217 | $6,500 | 9217 | $1,500 | $19,500 |
| Casing Crew / Tongs | 9118 | $75,000 | 9218 | | 9218 | | $75,000 |
| Drill Bits | 9119 | $112,750 | 9219 | | 9219 | | $112,750 |
| Insurance | 9120 | $10,000 | 9220 | | 9220 | | $10,000 |
| Roustabout Services | 9121 | $4,000 | 9221 | | 9221 | $45,000 | $49,000 |
| Consulting Services | 9122 | $94,865 | 9230 | $145,363 | 9230 | $10,000 | $250,228 |
| Electricity | | | 9223 | | 9223 | | |
| Fuel | 9124 | $103,991 | 9224 | $286,000 | 9224 | | $389,991 |
| Perforating | | | 9225 | | 9225 | | |
| Wireline Service | 9126 | $0 | 9226 | $296,050 | 9226 | | $296,050 |
| Flow Testing | | | 9227 | | 9227 | | |
| Engineering Service | 9128 | $6,000 | 9228 | | 9228 | | $6,000 |
| Damage/Surface/Easements | 9130 | $35,000 | 9200 | | 9200 | | $35,000 |
| Repairs and Maintenance | | | 9231 | $7,900 | 9231 | | $7,900 |
| Downhole Equipment Rental | 9133 | $6,249 | 9233 | $35,995 | | | $42,244 |
| Hauling | 9134 | $21,837 | | | | | $21,837 |
| Welding | 9135 | $5,000 | 9235 | | 9235 | $2,500 | $7,500 |
| Pit Liner | | | | | | | |
| Materials & Supplies | 9137 | $2,500 | | | 9232 | $2,500 | $5,000 |
| Drilling Conductor | 9138 | $15,000 | | | | | $15,000 |
| Saltwater Hauling & Disposal | 9142 | $10,000 | 9242 | $36,675 | 9242 | $68,000 | $114,675 |
| Legal Expenses | 9143 | $100,000 | | | | | $100,000 |
| Mud Logging | 9144 | $20,897 | | | | | $20,897 |
| Cuttings Disposal | 9146 | $121,300 | | | | | $121,300 |
| Fishing Tools | 9148 | $0 | | | | | |
| BOP/Superchoke Rental/Pump/P&/Sws | 9150 | $6,874 | 9250 | $115,600 | 9250 | | $122,474 |
| Well/Mud-Monitoring Equipment | 9151 | $13,748 | | | | | $13,748 |
| Water Well | 9152 | $7,249 | | | | | $7,249 |
| Flowback Equipment/Personnel | | | 9256 | $51,500 | 9256 | $60,000 | $111,500 |
| BOP Testing & Services | 9157 | $5,000 | | | | | $5,000 |
| Base Operations | 9163 | $32,996 | 9263 | $28,293 | 9263 | | $61,289 |
| Solids Control Equipment | 9166 | $62,493 | | | | | $62,493 |
| Pit Cleaning/Rig Washing | 9167 | $20,000 | | | | | $20,000 |
| Overhead | 9170 | $23,372 | | | | | $23,372 |
| Miscellaneous & Contingency  5% | 9190 | $117,664 | 9290 | | 9290 | $11,750 | $129,414 |
| Coiled Tubing Rental | | | 9252 | | 9252 | | |
| Crane Rental | | | 9254 | $43,450 | 9254 | $3,500 | $46,950 |
| Snubbing Unit Rental | | | 9240 | $63,000 | 9240 | | $63,000 |
| Hot Oil Treatments | | | 9204 | | 9204 | | |
| Nitrogen | | | 9258 | | 9258 | | |
| TOTAL INTANGIBLE COST | | $2,470,954 | | $4,237,589 | | $242,750 | $6,951,293 |

| TANGIBLE - EQUIPMENT | Size | Feet | $/Foot | Drilling Code | Drilling Cost | Completions Codes | Completions Cost | Facilities Codes | Facilities Cost | Completed Well Cost |
|---|---|---|---|---|---|---|---|---|---|---|
| Tubulars | | | | | | | | | | |
| Surface Casing | 13-3/8" | 1,500 | $39.00 | 9301 | $58,500 | | | | | $58,500 |
| Intermediate Csg | 9-5/8" | | | 9373 | $0 | | | | | |
| Long String Casing | 5-1/2" | 19,123 | $23.00 | 9302 | $454,887 | | | | | $454,887 |
| Liner | | | | 9314 | | | | | | |
| Tubing | 2-7/8" | 9,000 | $6.00 | | | 9303 | | 9303 | $69,000 | $69,000 |
| Rods | | | | | | 9378 | | 9378 | | |
| Wellhead Equipment | | | | 9304 | $40,000 | 9304 | $25,000 | 9304 | | $65,000 |
| Casing Accessories | | | | 9322 | $55,000 | 9322 | | 9304 | | $55,000 |
| Pumping Unit & Engine | | | | 9305 | | 9305 | | | | |
| Down Hole Pump | | | | 9306 | | 9306 | | | | |
| Tank Battery | | | | 9307 | | 9307 | | 9307 | $77,500 | $77,500 |
| Heater Treater/Separator | | | | 9308 | | 9308 | | 9308 | $70,300 | $70,300 |
| Dehydrator | | | | 9309 | | 9309 | | 9309 | | |
| Flowlines and Fittings | | | | 9310 | | 9310 | | 9310 | $45,000 | $45,000 |
| Compressor | | | | 9311 | | 9311 | | 9311 | | |
| Stock Tanks | | | | 9313 | | 9313 | | 9313 | | |
| Dike/Spill Containment | | | | 9315 | | 9315 | | 9315 | $15,000 | $15,000 |
| Gun Barrel | | | | 9316 | | 9316 | | 9316 | | |
| Submersible Pump | | | | 9317 | | 9317 | | 9317 | | |
| Subsurface Equipment | | | | 9318 | | 9318 | | 9318 | $50,000 | $50,000 |
| Equipment Salvage | | | | 9319 | | 9319 | | 9319 | | |
| Packer | | | | 9320 | | 9320 | | 9320 | | |
| Injection Pump | | | | 9321 | | 9321 | | 9321 | | |
| Gas Lift | | | | 9324 | | 9324 | | 9324 | $35,000 | $35,000 |
| Miscellaneous & Contingency | | | | 9390 | | 9390 | | 9390 | | |
| TOTAL TANGIBLE COST | | | | | $608,387 | | $25,000 | | $361,800 | $995,187 |
| TOTAL COST | | | | | $3,079,341 | | $4,262,589 | | $604,550 | $7,946,480 |

AUG 23 2018

CRAWLEY

CHISHOLM OIL AND GAS OPERATING, LLC

*FAXED 8/23/18*

ROBERT M. ZINKE
CEO

*137251-01*
*GWI .04567000*
*NRI .03913000*
*JMD, JAG, PB, KJ, AP, DT,*
*AC, LK, LS, SG*

August 22, 2018

CRAWLEY PETROLEUM CORPORATION
105 N. HUDSON, #800
OKLAHOMA CITY OK 73102-4803

Re:    Workover Notice – Preacher Creek Ranch 1-14MH
       Section 14 – T18N – R8W
       Kingfisher County, Oklahoma

To Whom it May Concern:

Chisholm Oil and Gas Operating, LLC ("Chisholm"), as Operator, hereby proposes a workover on the captioned well. Pursuant to the terms of the Joint Operating Agreement dated August 4, 1970, enclosed herewith is the associated AFE in the amount of $148,977 for your election.

Please indicate your consent by signing the enclosed AFE in the space provided and returning to the undersigned at the letterhead address or by fax at 918-935-3932. Although you have thirty (30) days to respond, we would appreciate an expedited response.

Should you have any questions, please do not hesitate to contact me at (918) 488-6449 or by email at lauren.daily@chisholmog.com. For technical questions, please contact our Project Engineering Manager, Sean LiSooey, at (918) 488-6482 or email at sean.lisooey@chisholmog.com.

Sincerely,

Chisholm Oil and Gas Operating, LLC

*Lauren Daily*

Lauren Daily
Senior Landman

CHISHOLM OIL & GAS OPERATING, LLC
One Warren Place, 6100 South Yale Avenue, Suite 1700
Tulsa, Oklahoma 74136
PHONE (918) 488-6400  FAX (918) 488-6570

OIL AND GAS EXPLORATION AND PRODUCTION

EXHIBIT
*12*