## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

CRAWLEY PETROLEUM CORPORATION,  )
                                     )
               Plaintiff,         )
                                     )   Case No. CIV-17-1365-SLP
v.                                  )
                                     )
GASTAR EXPLORATION INC.,        )
                                     )
              Defendant.     )

## DEFENDANT GASTAR EXPLORATION, INC.'S
## BRIEF IN OPPOSITION TO PLAINTIFF CRAWLEY PETROLEUM
## COPORATION'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1, Defendant Gastar Exploration Inc. ("Gastar") provides this Brief in Opposition to the Motion for Summary Judgment with Brief in Support, ECF 33, filed by Plaintiff Crawley Petroleum Corporation ("Crawley").

Respectfully Submitted,

*/s/ Michael R. Perri*
Michael R. Perri, OBA #11954
Jason A. Dunn, OBA #22788
**PHILLIPS MURRAH P.C.**
Corporate Tower, 13th Floor
101 N. Robinson
Oklahoma City, OK   73102
Telephone: (405) 235-4100
Facsimile:  (405) 235-4133
mrperri@phillipsmurrah.com
jadunn@phillipsmurrah.com
***Attorneys for Defendant***
***Gastar Exploration Inc.***

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................. 1

RESPONSE TO CRAWLEY'S STATEMENT OF MATERIAL FACTS
    AS TO WHICH NO GENUINE DISPUTE EXISTS ............................................ 4

ARGUMENTS AND AUTHORITIES ............................................................................ 7

    I.      Crawley's position rests on a completely untenable interpretation
            of the Conservation Statute .......................................................................... 9

    II.     The 1971 JOA was never intended to apply to, and does not
            apply to, the Horizontal Well .................................................................... 12

    III.    The Pooling Order does not terminate any pre-existing contract
            rights for the Horizontal Well because Crawley's rights flow
            solely from the Pooling Order .................................................................... 15

    IV.    Crawley's construction of the 1971 JOA and the Conservation
            Statute creates absurd results and jeopardizes the very correlative
            rights protected by the OCC's spacing and pooling powers ....................... 16

CONCLUSION ........................................................................................................... 17

# TABLE OF AUTHORITIES

## CASES

*Farley v. Stacy,*
No. 14-CV-0008-JHP-PJC, 2015 WL 3866836, at *4 (N.D. Okla. June 23, 2015), *aff'd,* 645 F. App'x 684 (10th Cir. 2016) ........................................................ 14

*Grayhorse Energy, LLC v. Crawley Petroleum Corp.,*
2010 OK CIV APP 145, ¶ 10, 245 P.3d 1249 ........................................................ 17

*Gulfstream Petroleum Corp. v. Layden,*
1981 OK 56, 632 P.2d 376 ................................................................................... 10

*Harding & Shelton, Inc. v. Prospective Inv. & Trading Co.,*
2005 OK CIV APP 88, ¶ 18, 123 P.3d 56 ....................................................... 15, 16

*Kaneb Production Company v. GHK Exploration Company,*
1989 OK 11, 769 P.2d 1388 ................................................................................. 12

*Marathon Oil Co. v. Corp. Comm'n of State,*
1982 OK 19, 651 P.2d 1051 ................................................................................ 7, 8

*NBI Servs., Inc. v. Corp. Comm'n of State,*
2010 OK CIV APP 86, ¶ 17, 241 P.3d 685 ....................................................... 8, 11

*Provident Life & Acc. Ins. Co. v. Ridenour,*
1992 OK CIV APP 93, 838 P.2d 530 ..................................................................... 13

*Sprowls v. Oryx Energy Co.,*
72 F.3d 138 (10th Cir. 1995) ................................................................................. 17

*Tenneco Oil Co. v. El Paso Nat. Gas Co.,*
1984 OK 52, 687 P.2d 1049 ................................................................................. 11

*Tenneco Oil Co. v. Oklahoma Corp. Comm'n,*
1989 OK 89, 775 P.2d 296 ................................................................................... 15

*Terrill v. Laney,*
1948 OK 109, 193 P.2d 296 ................................................................................. 14

## STATUTES

15 Okla. Stat. § 152 ............................................................................................... 13

15 Okla. Stat. § 154 ............................................................................................... 13

15 Okla. Stat. § 162 ........................................................................... 13

15 Okla. Stat. § 163 ........................................................................... 13

15 Okla. Stat. § 164 ........................................................................... 14

52 Okla. Stat. § 87.1 ................................................................ 3, 7, 8, 9

**OTHER AUTHORITIES**

Restatement (Second) of Contracts § 212 (1981)............................................. 13

# INTRODUCTION

In its Motion for Summary Judgment with Brief in Support, ECF 33, (the "Crawley Motion"), Crawley erroneously contends that a joint operating agreement executed nearly 50 years ago was then intended to govern the drilling of well that was not even possible without technology developed until decades later. Yet as demonstrated herein, and in Gastar's Motion for Summary Judgment and Brief in Support, ECF 31, (the "Gastar Motion") which is incorporated herein in full, Crawley's position is completely contradictory to what the parties could have intended and in fact intended for that 1971 JOA[1] at the time it was executed, as well as the purpose and effect of the pooling and spacing powers of the Oklahoma Corporation Commission (the "OCC"). Crawley's position amounts to an invitation for this Court to facilitate an impermissible collateral attack on the applicable OCC orders issued pursuant to those powers.

The predecessors-in-interest of Gastar and Crawley entered into the 1971 JOA using an industry standard form of model operating agreement created in 1956. The 1971 JOA covered the parties' drilling and development of oil and gas from specified tracts of land within a larger section of land located in Kingfisher County, Oklahoma. For the next three decades, the parties drilled for and developed oil and natural gas exclusively through the use of traditional vertical wells, as was the standard practice throughout the oil and gas industry during that time.

With the turn of the 21st Century a new technology for the drilling and development of oil and gas wells came to "dominate the modern drilling landscape" – the

---

[1] Terms not defined herein are used as defined and described in the Gastar Motion, ECF 31.

horizontal well. *See* Gastar Motion, ECF 31, pp. 1-2. However, neither the 1956 model operating agreement nor any of its subsequent revised forms even addressed the concept of horizontal drilling. *Id.* As a result, the industry group responsible for providing model operating agreements, the American Association of Petroleum Landmen (the "AAPL"), issued a revised model operating agreement specifically modified for horizontal drilling and development (the "Horizontal JOA") in 2014. *Id.* Those revisions included additional or modified definitions addressing issues relevant to horizontal drilling and new provisions addressing certain operational matters unique to horizontal drilling. *Id.*

In 2017, Crawley and Gastar each separately proposed the drilling of a horizontal well (the "Horizontal Well") within a section of land that included, but is larger than, the area of land covered by the 1971 JOA. Crawley and Gastar each separately filed applications with the Oklahoma Corporation Commission (the "OCC") seeking to use the pooling power of the OCC to drill the Horizontal Well. The OCC subsequently issued the necessary order for the drilling of the Horizontal Well and designated Gastar as the operator of the Horizontal Well. Crawley subsequently notified Gastar of its election to participate in the Horizontal Well as to its working interests for lands covered by the OCC order, but claiming that it reserved the right to make a separate election to participate in the Horizontal Well for its working interests corresponding to the lands covered by the 1971 JOA. Gastar responded that the 1971 JOA did not apply to the Horizontal Well, and that Crawley was only entitled to participate via its election under the OCC's order authorizing the Horizontal Well.

Crawley subsequently filed this lawsuit seeking a declaratory judgment that the 1971 JOA remains in effect and affords Crawley the right to make a separate election to participate in the Horizontal Well for the working interests corresponding to the same area of land covered by the 1971 JOA. Alternatively, Crawley asserts that Gastar breached the 1971 JOA and requests specific performance of the 1971 JOA in the form of Gastar proposing and conducting operations of the Horizontal Well, and any future wells, in accordance with the 1971 JOA.

Gastar does not dispute that the 1971 JOA remains binding and in effect as to current or future vertical wells. However, the 1971 JOA does not apply to the Horizontal Well, or any future horizontal wells, and it certainly does not afford Crawley the right to make separate election under the 1971 JOA to participate in the Horizontal Well or any future horizontal wells. The OCC's Pooling Order and Crawley's election thereunder solely control its participation in the Horizontal Well as a matter of law for several reasons. First, Crawley's position rests on a completely untenable interpretation of the relevant oil and gas conservation statute, 52 Okla. Stat. § 87.1 (the "Conservation Statute"). Second, the 1971 JOA was never intended to apply, and does not apply, to the Horizontal Well. Third, and relatedly, Crawley's participation under the Pooling Order does not terminate any pre-existing contract rights related to the Horizontal Well because Crawley's participation flows solely from the Pooling Order, not from the 1971 JOA. Fourth and finally, Crawley's construction of the 1971 JOA, the Pooling Order and the Conservation Statute creates absurd results and jeopardizes the very correlative rights to be protected by the OCC's spacing and pooling powers.

For these reasons, and those detailed further in the Gastar Motion, ECF 31, the Court should enter an order denying the request for summary judgment by Crawley and granting summary judgment in favor of Gastar as specified and requested in the Gastar Motion.

## RESPONSE TO CRAWLEY'S STATEMENT OF MATERIAL FACTS
## AS TO WHICH NO GENUINE DISPUTE EXISTS

For its Response to the Statement of Material Facts As to Which No Genuine Dispute Exists in the Crawley Motion, Gastar states as follows:

1.     Admitted.

2.     Admitted.

3.     Admitted.

4.     Admitted in part, denied in part. Gastar admits that the 1971 JOA continues in effect as to vertical wells as intended at the time of its execution and that of the related amendment, but denies that the JOA has any effect or application to the drilling of horizontal wells such as the Horizontal Well at issue here. *See* Gastar Motion, ECF 31, UMF ¶¶ 3-22.

5.     Admitted.

6.     Admitted.

7.     Admitted that the letter cited by Crawley so states, but immaterial. The 1971 JOA has no application to the proposal or drilling of a Horizontal Well. *See* Gastar's Motion, ECF 31, UMF ¶¶ 5-10 and pp. 10-12.

8.      Admitted that the letter cited by Crawley so states, but immaterial. The 1971 JOA has no application to the proposal or drilling of a Horizontal Well. *See* Gastar's Motion, ECF 31, UMF ¶¶ 10-18 and pp. 13-17.

9.      Admitted.

10.     Admitted.

11.     Admitted.

12.     Admitted.

13.     Admitted.

14.     Admitted.

15.     Admitted in part, denied in part. Gastar admits that the Pooling Order states:

> Applicants [Crawley and Gastar] are the owners of the right to drill wells on said drilling and spacing units and to develop and produce said common sources of supply, have made a bona fide effort to reach an agreement with all of the owners in such drilling and spacing unit as set forth on Exhibit "A," to pool their interests and to develop the drilling and spacing unit and common sources of supply as a unit, and the Commission should issue an order requiring such owners to pool and develop the drilling and spacing unit and common sources of supply covered hereby as a unit.

*See* Crawley Motion, ECF 33, p. 4, ¶ 15 and ECF 33-1, Ex. 1G, Pooling Order (emphasis added).

Gastar denies Crawley's implication that Pooling Order somehow demonstrates the Horizontal Well was governed, at least in part, by the 1971 JOA. To the contrary, the cited language of the Pooling Order undisputedly and unequivocally identifies both

Crawley and Gastar as owners not having reached an agreement such as the 1971 JOA. ECF 33-1, Ex. 1G, Pooling Order. Specifically, Crawley is included in Gastar's list of owners with whom no such agreement exists in Exhibit A to the Pooling Order. *Id.* Correspondingly, and even more significantly, Gastar is included in Crawley's list of owners with whom no such agreement exists in Exhibit A to the Pooling Order. *Id.*[2] By the very language included in the Pooling Order, Crawley and Gastar are, by definition, not parties to an agreement (such as the 1971 JOA) to develop and produce the common sources for the Horizontal Well. Thus, the Pooling Order does provide that "the applicants [Crawley and Gastar] failed to reach such a development agreement with all such owners," including each other, despite Crawley's assertion otherwise. *See* Crawley Motion, ECF 33, p. 4, ¶ 15.

16.     Admitted.

17.     Admitted in part, denied in part. Gastar admits that Crawley sent the referenced letter purporting to simultaneously make an election concerning part of its interests and reserve its right to make a subsequent election for part of its interests as stated paragraph 16 of the Crawley Motion. Gastar denies that Crawley's purported partial election and partial reservation was valid or effective. *See* Gastar Motion, ECF 31, UMF ¶¶ 19-22 and pp. 17-19.

18.     Admitted.

---

[2] The significance of Gastar's inclusion in Exhibit A to the Pooling Order is further emphasized by the fact that, unlike Crawley who owned interests both inside and outside of the 1971 JOA's otherwise applicable Unit Area, Gastar only owned interests which were within the 1971 JOA's Unit Area, and, therefore, otherwise subject to a pre-existing agreement to produce and develop in the form of the 1971 JOA *if* it were applicable (which it is not).

19.    Admitted.

20.    Admitted.

21.    Admitted.

## ARGUMENT AND AUTHORITIES

At the center of all of Crawley's supposed reasons for summary judgment is the

Conservation Statute, which provides:

> (e) The drilling of any well or wells into any common source of supply for the purpose of producing oil or gas therefrom, after a spacing order has been entered by the Commission covering such common source of supply, at a location other than that fixed by the order is hereby prohibited. The drilling of any well or wells into a common source of supply, covered by a pending spacing application, at a location other than that approved by a special order of the Commission authorizing the drilling of such well is hereby prohibited. The operation of any well drilled in violation of any spacing so entered is also hereby prohibited. When two or more separately owned tracts of land are embraced within an established spacing unit, or where there are undivided interests separately owned, or both such separately owned tracts and undivided interests embraced within such established spacing unit, the owners thereof may validly pool their interests and develop their lands as a unit. Where, however, such owners have not agreed to pool their interests and where one such separate owner has drilled or proposes to drill a well on the unit to the common source of supply, the Commission, to avoid the drilling of unnecessary wells, or to protect correlative rights, shall, upon a proper application therefor and a hearing thereon, require such owners to pool and develop their lands in the spacing unit as a unit.

52 Okla. Stat. § 87.1(e) (emphasis added).

Crawley correctly cites *Marathon Oil Co. v. Corp. Comm'n of State,* 1982 OK 19,

651 P.2d 1051, 1054, for the proposition that "[a]s the pooling statute [Okla. Stat. §

7

87.1(e)] now reads, it is clearly not contemplated that all owners of a right to drill must be joined in a pooling action." *See* Crawley Motion, ECF 33 at pp 8-9. Indeed, where owners have already agreed to voluntarily pool their interests, the OCC has no jurisdiction to force pool their interests. "[A] pooling applicant must establish that there is no agreement among the owners of the oil and gas rights for the development of the property." *NBI Servs., Inc. v. Corp. Comm'n of State,* 2010 OK CIV APP 86, ¶ 17, 241 P.3d 685, 690. "Only, among other things, 'where ... the owners have not agreed to pool their interests' does the OCC have the authority to enter a forced pooling order." *Id.*

The rejection of Crawley's argument begins and ends with two points of undisputed facts. First, both Crawley and Gastar were applicants for a forced-pooling order and, as such, confirmed that their interests could be force pooled. This is because, by definition, those interests could not be subject to a private voluntary pooling agreement such as the 1971 JOA and also be the subject of a pooling order application. Second, the resulting Pooling Order contains no discussion, much less any finding or determination that some portion of Crawley's or Gastar's interests were subject to a private agreement, *i.e.,* the 1971 JOA, and thus excluded from forced pooling by the OCC's Pooling Order. The lack of a private agreement, such as the 1971 JOA, was a condition precedent for the filing of the pooling applications by both Crawley and Gastar. The lack of any exclusion or reservation of a portion of Crawley's interests from the pooling proceedings confirms that all of Crawley's interests were pooled. *See e.g., Marathon,* 1982 OK 19, 651 P.2d 1051, 1054 (upholding the dismissal of two working

interest owners from forced-pooling proceedings following their execution of private agreements with the applicant).

## I. CRAWLEY'S POSITION RESTS ON A COMPLETELY UNTENABLE INTERPRETATION OF THE CONSERVATION STATUTE

The primary argument put forth on behalf of Crawley is the untenable proposition that the Pooling Order covers all owners but only "pools" those owners who have not reached an agreement with the Applicant. This assertion comes from Crawley's view that the language of the Pooling Order provides for subjecting the interest of any owner to a pooling proceeding regardless of pre-existing agreements, but only affording elections to those who are not subject to a private agreement such as the 1971 JOA. Yet this argument is fundamentally inconsistent with the jurisdictional limitations imposed upon the OCC in its exercise of subject matter jurisdiction for pooling. The Conservation Statute is absolutely clear that in order to obtain any pooling order the applicant must allege and prove that there is not a pre-existing agreement for development of the working interest rights of the owner to be pooled.

Paragraph No. 4 in the Findings portion of the Pooling Order states that the Applicant attempted to reach an agreement with all of the owners named on Exhibit "A." *See* Pooling Order, ECF 33-1, Ex. 1G. That is at least a quasi-jurisdictional fact which must appear in all pooling orders. However, the end of that same sentence states that all such owners are pooled by the Pooling Order. *Id.* That is a correct and true statement. Crawley somehow believes that the Pooling Order can simultaneously (1) pool any owner regardless of whether their working interest is subject to prior agreement, but (2) then by

limiting language of the Pooling Order somehow direct only the owners not already subject to a private agreement (like the 1971 JOA) that those owners alone must elect to participate.

Crawley continually emphasizes the language of the Pooling Order describing "[a]ny owner of the right to drill ...who has not agreed with Operator to develop said unit..." *See generally*, Crawley Motion, ECF 33. That language is common to virtually every pooling order issued by the OCC and simply restates the fact that the OCC's jurisdiction has been correctly activated as to the owners over whom the Commission has authority to pool. Paragraph No. 1 of the Pooling Order states that "... the rights and equities of all oil and gas owners covered hereby are pooled, adjudicated and determined." *See* Pooling Order, ECF 33-1, Ex. 1G. Again, Exhibit "A" describes all owners subject to the Pooling Order and one of those is Crawley. *Id.* In order for Crawley's position to even make sense there would have to be described on Exhibit "A" all working interest owners in the unit, with only those owners not yet in agreement with the Operator required to be subject to the relinquishment provisions of the Pooling Order.

There is nothing in this Pooling Order, or any other pooling order ever issued by the Commission, to support such a claim. The OCC's jurisdiction to enter a pooling order, requires three elements: "(1) jurisdiction over the person, (2) jurisdiction over the subject matter, and (3) jurisdiction to render the particular judgment." *Gulfstream Petroleum Corp. v. Layden,* 1981 OK 56, 632 P.2d 376, 378. "[A]lthough the OCC does not have the authority to adjudicate private rights disputes, it does have the authority of a court of record to make fact findings to determine whether the dispute is one involving

private rights or public rights. That is, the OCC has the power to receive evidence and make fact findings to determine whether it has the jurisdiction to enter an order." *NBI Servs., Inc. v. Corp. Comm'n of State,* 2010 OK CIV APP 86, ¶ 19, 241 P.3d 685, 690–91. If the OCC is presented evidence that any of those elements of jurisdiction is lacking with respect to any owner, that owner cannot be pooled. The OCC cannot and will not enter an order to pool an owner subject to a joint operating agreement because there is no subject matter jurisdiction for that action.

As detailed in Gastar's Motion, if an owner has a portion of its working interest burdened with an agreement like the 1971 JOA and also a portion not so burdened, that evidence must be presented and specific findings must be included in the Pooling Order to show that only the unburdened interest is being pooled. *See* Gastar Motion, ECF 31, pp. 14-17. Otherwise, all of the working interest of such owner is pooled. *Id.* There is no finding in the Pooling Order to that effect and all of Crawley's working interest is subject to a final and unappealed Pooling Order. *See* Pooling Order, ECF 33-1, Ex. 1G; *see also Tenneco Oil Co. v. El Paso Nat. Gas Co.,* 1984 OK 52, 687 P.2d 1049, 1055 ("It cannot be argued successfully or established by the evidence that the forced-pooling order issued herein requires a written notice of election, or any given method for that matter. An election can be written, oral, by estoppel, or according to statute, rule, or regulation, to name but a few methods."). To now argue otherwise is an impermissible collateral attack on the Pooling Order, which is precisely what Crawley does here. *See* Gastar Motion, ECF 31, pp. 14-17.

This collateral attack demonstrates Crawley's reliance on *Kaneb Production Company v. GHK Exploration Company,* 1989 OK 11, 769 P.2d 1388, 1391, as entirely misplaced. First and foremost, *Kaneb* makes it clear that OCC poling orders are immune from collateral attack – not only via the district courts, but via the OCC itself. This is particularly true when the challenger presents evidence outside of the record of a pooling order. That is precisely what Crawley does here by seeking to limit the scope of the Pooling Order on the basis of the 1971 JOA that was never presented to the OCC to consider and address in its findings and rulings for the Pooling Order. *See id.* Crawley does not, and cannot, assert that the Pooling Order is "facially void," and, therefore, the declaration it seeks from this Court limiting the Pooling Order's scope "is impermissible." *Id.* at 1392. Contrary to Crawley's reliance, *Kaneb's* relevance lies in the fact that it merely reinforces the Conservation Statute's requirement that there be no private agreement covering the working interest owners to be pooled.

## II.  THE 1971 JOA WAS NEVER INTENDED TO APPLY TO, AND DOES NOT APPLY TO, THE HORIZONTAL WELL

In two short sentences Crawley makes the conclusory claim that the 1971 JOA applies to both vertical and horizontal wells, relying solely on the opinions of Crawley's proffered expert. *See* Crawley Motion, ECF 33, p. 14. However, as demonstrated in Gastar's Motion, the 1971 JOA predated the development of horizontal drilling, and the 1956 industry-standard form joint operating agreement used here was not updated to address and provide for horizontal drilling until 2014 – almost six decades later. *See* Gastar Motion, ECF 31, pp. 10-12. In addition, during the 1990s Oklahoma's legislation

changed to specifically address drilling and production of horizontal wells, including significant differences in the Conservation's Statute treatment of horizontal and vertical wells as well as the OCC's applicable rules. *Id.* at 10. Like the technology of horizontal drilling and production itself, these statutory and regulatory changes could not have been contemplated when the form joint operating agreement was issued in 1956 or when the parties used that form for the 1971 JOA. *Id.*

Because the parties could not have intended the 1971 JOA to apply to the technology of horizontal drilling or to horizontal wells, it cannot be interpreted to govern the drilling of a horizontal well more than four decades later. "A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful." 15 Okla. Stat. § 152; *Provident Life & Acc. Ins. Co. v. Ridenour,* 1992 OK CIV APP 93, 838 P.2d 530, 531 ("[A] contract must be interpreted as to give effect to the intention of the parties at the time of the contracting."). "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." 15 Okla. Stat. § 154. "A contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." 15 Okla. Stat. § 162. "A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." 15 Okla. Stat. § 163; *see also* Restatement (Second) of Contracts § 212 (1981) ("The interpretation of an integrated agreement is directed to the meaning of the terms of the writing or writings in the light of the circumstances, in accordance with the

rules stated in this Chapter."). "However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract." 15 Okla. Stat. § 164.

Relatedly, Crawley's attempt to rely on hearsay conduct in the form of the purported contents of other joint operating agreements and purported conduct of other parties to those joint operating agreements is both improper and ineffective. *See* Crawley's Motion, ECF 33, pp. 11-12, Affidavit of Katie Jones, ECF 33-1, ¶¶ 18-20 and Exs. 1J, 1K and 1L and *Farley v. Stacy,* No. 14-CV-0008-JHP-PJC, 2015 WL 3866836, at *4 (N.D. Okla. June 23, 2015), *aff'd,* 645 F. App'x 684 (10th Cir. 2016) ("Hearsay evidence is inadmissible evidence that may not be considered for summary judgment purposes.").

"The language used in a contract is to govern its interpretation, and, if such language is clearly explicit and does not involve uncertainty, the words used are to be understood in their ordinary and proper sense, and, when the language is plain and unambiguous, extrinsic evidence as to its meaning is not admissible." *Terrill v. Laney,* 1948 OK 109, 193 P.2d 296, 300. Neither Crawley nor Gastar make any contention that the 1971 JOA is ambiguous, because it is not. Consequently, no extrinsic evidence about Crawley's joint operating agreement with Casillas Petroleum Resources Partners, LLC ("Casillas"); Crawley's joint operating agreement with Chisholm Oil and Gas Operating LLC ("Chisholm"); any related force-pooling proceedings or any related conduct, agreements, understandings, elections or positions taken by Crawley, Casillas or Chisholm have any relevance to the 1971 JOA between Crawley and Gastar, this Pooling

Order or Crawley's and Gastar's related conduct. Besides lacking proper foundation and being entirely impermissible hearsay, Crawley fails to make any meaningful assertion of how anything relating to Casillas or Chisholm compares to, much less controls, the 1971 JOA, the conduct of Crawley and Gastar thereunder or the Pooling Order entered for this Horizontal Well.

### III. THE POOLING ORDER DOES NOT TERMINATE ANY PRE-EXISTING CONTRACT RIGHTS FOR THE HORIZONTAL WELL BECAUSE CRAWLEY'S RIGHTS FLOW SOLELY FROM THE POOLING ORDER

Crawley's argument that it effectively forfeits valuable contract rights under the 1971 JOA if forced to participate under the Pooling Order fails for a number of reasons. *See* Crawley Motion, ECF 33, pp. 12-13. First, as discussed above and detailed in Gastar's Motion, the 1971 JOA simply does not apply horizontal wells. *See* Section II, *infra*, and Gastar Motion, ECF 31, pp. 10-13. As a result, Crawley lacks any contractual rights under the 1971 JOA that would otherwise be available absent the Pooling Order. Second, Oklahoma law is clear that where no such private agreement exists, an owner's participation in a well, horizontal or otherwise, is governed by a pooling order. *See Tenneco Oil Co. v. Oklahoma Corp. Comm'n,* 1989 OK 89, 775 P.2d 296, 297–98 (The OCC's jurisdiction over pooling orders, and rights and obligations of parties thereunder, controls unless "the party's right to participate flows and arises from private agreements."); and *Harding & Shelton, Inc. v. Prospective Inv. & Trading Co.,* 2005 OK CIV APP 88, ¶ 18, 123 P.3d 56, 62 ("If a dispute arises regarding the rights under a pooling order, the Commission has primary jurisdiction to determine the interest holders' rights and liabilities under the order.").

Moreover, Crawley admits that it has a number of options on which can elect to participate under the Pooling Order or receive bonus and royalty payment in return for not participating. *See* Crawley Motion, ECF 33, p. 5, ¶ 18; Affidavit of Katie Jones, ECF 33-1, ¶ 14 and Pooling Order, ECF 33-1, Ex. 1G ¶¶ 2-3. Crawley's contention that it was forever deprived of the possibility of negotiating rights and obligations in addition to those included in the Pooling Order is simply not accurate. *Harding,* 2005 OK CIV APP at ¶ 21, 123 P.3d at 63 (Noting that an interest owner and "Operators entered into a permissible agreement 'to enlarge or otherwise define the terms set forth in the pooling order.'"). The Pooling Order does not effectuate a termination of contractual rights as claimed by Crawley because Crawley did not have any such rights in the Horizontal Well under the 1971 JOA. Crawley's argument also ignores that the potential for a new private agreement preserves the opportunity for the subject interest owners to enlarge or otherwise define the terms of the Pooling Order to include some of the rights it claims would be otherwise available under the 1971 JOA but are not under the Pooling Order.

IV.  **CRAWLEY'S CONSTRUCTION OF THE 1971 JOA AND THE CONSERVATION STATUTE CREATES ABSURD RESULTS AND JEOPARDIZES THE VERY CORRELATIVE RIGHTS PROTECTED BY THE OCC'S SPACING AND POOLING POWERS**

As detailed in the Gastar Motion, the OCC's powers arise from "the conservation principles of preventing economic waste, and protecting correlative rights" and "[p]ublic rights are involved in the area of oil and gas conservation] when 'a unitization order, pooling order, or order setting the allowables on the unit's well affects the correlative rights of all mineral rights owners in a common source of supply in a unit." ECF 31, p. 17

(quoting *Sprowls v. Oryx Energy Co.,* 72 F.3d 138 (10th Cir. 1995) (unpublished) and *Grayhorse Energy, LLC v. Crawley Petroleum Corp.,* 2010 OK CIV APP 145, ¶ 10, 245 P.3d 1249, 1254).

For example, Crawley's Motion does not even attempt to address the reality that its position would set the precedent for Crawley (and other interest owners) to elect to participate under one communitization vehicle (*i.e.*, the Pooling Order) and not under the other (*i.e.*, the 1971 JOA, or vice versa). *See generally*, Crawley Motion, ECF 33, and Gastar Motion, ECF 31, pp. 18-19. If permitted to do so, one well bore, *e.g.,* the well bore for the Horizontal Well, would then be subject to independent ownership regimes – the 1971 JOA and the Pooling Order – for the same working interest of one party. *Id.* at 19. In the case of the Horizontal Well, based on the Pooling Order applied for by both Crawley and Gastar, the OCC has no statutory authority to allocate production and well costs from the production of oil and gas out of the same common source of supply. *Id.* If two such regimes were permitted, as required under Crawley's position, the OCC would have no way to protect the correlative rights by ensuring proper allocation of production and well costs from the production out of Section 8's common source of supply. *Id*. Crawley's position contradicts Oklahoma law on the spacing and pooling powers of the OCC and impairs the protection of correlative rights by the OCC vis-à-vis those powers.

## CONCLUSION

The OCC's Pooling Order and Crawley's election thereunder exclusively control its participation in the Horizontal Well as a matter of law. Crawley is not entitled to make

Draft a separate election under the 1971 JOA for the Horizontal Well for the reasons detailed herein.

First, Crawley relies on a completely untenable interpretation of the Conservation Statute, 52 Okla. Stat. § 87.1. Second, the 1971 JOA does not apply, and was never intended to apply, to the Horizontal Well. Third, and similarly, Crawley's claimed contractual rights under the 1971 JOA are not terminated by participation under the Pooling Order because Crawley's participation flows solely from the Pooling Order, and not from the 1971 JOA. Fourth and finally, Crawley's proffered reconciliation of the 1971 JOA, Pooling Order and the Conservation Statute creates absurd results and jeopardizes the very correlative rights to be protected by the OCC's spacing and pooling powers.

For these reasons, Crawley's request for summary judgement should be denied and summary judgment should be entered in favor of Gastar denying all relief requested by Crawley and granting all relief as requested by Gastar in its Motion.

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2018, I electronically transmitted the foregoing document to the Clerk of the Court for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Charles L. Puckett
Brian R. Matula
**GUM, PUCKETT & MACKECHNIE, LLP**
105 North Hudson, Suite 900
Oklahoma City, OK 73102
Telephone: (405) 488-1212
Facsimile: (405) 488-1216
clpuckett@gpmlegal.net
brmatula@gpmlegal.net
*Attorneys for Plaintiff Crawley Petroleum Corporation*

*/s/ Michael R. Perri*

01280636.DOC