**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CRAWLEY PETROLEUM CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. CIV-17-1365-SLP |
| v. | ) | |
| | ) | |
| GASTAR EXPLORATION INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT GASTAR EXPLORATION, INC.'S
<u>REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

Pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1,

Defendant Gastar Exploration Inc. ("Gastar") provides this Reply Brief in Support of

Motion for Summary Judgment with Brief in Support.

Respectfully Submitted,

*/s/ Michael R. Perri*
Michael R. Perri, OBA #11954
Jason A. Dunn, OBA #22788
**PHILLIPS MURRAH P.C.**
Corporate Tower, 13th Floor
101 N. Robinson
Oklahoma City, OK 73102
Telephone: (405) 235-4100
Facsimile: (405) 235-4133
mrperri@phillipsmurrah.com
jadunn@phillipsmurrah.com
***Attorneys for Defendant
Gastar Exploration Inc.***

Plaintiff Crawley Petroleum Corporation's Response to Defendant Gastar Exploration Inc.'s Motion for Summary Judgment and Brief in Support, ECF 40 (the "Crawley Response") fails to demonstrate any genuine issue of disputed material fact or any controlling point of law that defeats Gastar's Motion, ECF 31. As detailed herein and in Gastar's Motion, Gastar is entitled to judgment in its favor as a matter of law.

## I.  CRAWLEY'S RESPONSES TO GASTAR'S STATEMENT OF UNDISPUTED MATERIAL FACTS DO NOT CREATE A GENUINE ISSUE OF MATERIAL FACT

Under Local Civil Rule 56.1(d) "[e]ach individual statement by the movant or nonmovant pursuant to subparagraph (b) or (c) of this rule shall be followed by citation, with particularity, to any evidentiary material that the party presents in support of its positon pursuant to Fed. R. Civ. P. 56(c)." Local Rule of Civil Procedure 56.1(e) correspondingly provides that "[a]ll material facts set forth in the statement of material of the movant may be deemed admitted for purpose of summary judgment unless specifically controverted by the nonmovant using the procedures set forth in this rule." Where it did not unequivocally admit individual paragraphs of Gastar's Statements of Undisputed Material Facts ("UMF"),[1] Crawley's responses rely on immaterial facts or arguments and fail to cite, with particularity, evidentiary material that supports its position as follows:

1-3. Crawley admits Gastar UMF ¶¶ 1-3.

4. Crawley does not cite any language that allegedly "differs" from the 1971 JOA or how any such difference from or emphasis on such language demonstrates a

---

[1] Terms not defined herein are used as defined and described in the Gastar Motion, ECF 31.

genuine issue of material fact.

5. Crawley does not cite any evidentiary material, any authority or provide any explanation as to how any "filled in blanks, interlineations and strike-outs" or any "Amendment to the Operating Agreement" demonstrates a genuine issue of material fact relevant to the meaning and scope of the 1971 JOA.

6. Crawley does not cite any evidentiary material or any authority in support of its dispute of Gastar UMF ¶ 6 that demonstrates any genuine issue of material fact.

7. Crawley does not cite any evidentiary material or any authority in support of its dispute of Gastar UMF ¶ 7 that demonstrates any genuine issue of material fact.

8-9. Crawley admits Gastar UMF ¶¶ 8-9.

10. Crawley does not cite any evidentiary material or any authority in support of its dispute of Gastar UMF ¶ 10 that demonstrates any genuine issue of material fact.

11. Crawley does not cite any evidentiary material, any authority or provide any explanation as to how it purportedly "reserved the right to propose the Horizontal Well pursuant to the 1971 JOA." For example, Crawley fails to point to any portion of its pooling application, the transcript of the hearing on the pooling applications or the Pooling Order as setting forth a "reservation" with respect to the 1971 JOA.

12-13. Crawley admits Gastar UMF ¶¶ 12-13.

14. Crawley does not cite any "asserted facts in Paragraph 14 that differ from the specific language of the letter" or any explanation or authority demonstrating how any such differences demonstrate a genuine issue of material fact.

15-16.  Crawley admits Gastar UMF ¶¶ 15-16.

17. Crawley does not cite any evidentiary material or any authority in support of its dispute of Gastar UMF ¶ 17 that demonstrates any genuine issue of material fact. Specifically, the hypothetical assertion that other interest owners could have become parties to the 1971 JOA is unsupported, irrelevant and does not demonstrate any genuine issue of material fact.

18-21. Crawley admits Gastar UMF ¶¶ 18-21.

## II. Crawley's Additional Facts do not controvert Gastar's Statement of Undisputed Material Fact

Gastar admits that Crawley accurately excerpts the portion of the Pooling Order cited in Paragraph 13 of Crawley's Additional Facts Controverting Gastar's Statement of Asserted Undisputed Material Facts. Gastar disputes Crawley's unsupported assertion of the legal conclusion that "[t]he Pooling Order does not contain the jurisdictional and requisite language to the effect that applicant has not agreed to with all of the owners subject hereto to pool interests and to develop each of the units as a unit." *See* infra, Section III.B.

## III. Crawley's request for relief is a classic collateral attack on the "validity" of the Pooling Order

"A collateral attack on a judicial proceeding is an attempt to avoid, defeat, or evade it, or to deny its force and effect in some manner not provided by law; that is, in

some other way than by appeal, writ of error, certiorari, or motion for a new trial." *State ex rel. Comm'rs Land Office v. Corp. Comm'n,* 1979 OK 16, 590 P.2d 674, 677 (quoting *Watkins v. Jester,* 1924 OK 888, 103 Okla. 201, 229 P. 1085, 1088 (quoting *Bruno v. Getzelman,* 1918 OK 364, 70 Okla. 143, 173 P. 850, 853)); *see also Williams v. Nylund,* 268 F.2d 91, 93 (10th Cir. 1959) (quoting *May v. Casker*, 188 Okl. 448, 110 P.2d 287, 288). Jurisdictional facts necessary to the determination rendered in one proceeding cannot be collaterally attacked in another proceeding. *See e.g., Bruno v. Getzelman,* 1918 OK 364, 70 Okla. 143, 173 P. 850, 853 ("An adjudication of the jurisdictional facts in a domestic judgment is conclusive in a collateral proceeding attacking such judgment by attempting to again put such facts in issue."); and *Gregg v. Seawell,* 1922 OK 49, 85 Okla. 88, 204 P. 908, 909 ("We conclude that the plaintiffs in error in this cause cannot in a summary manner have adjudicated the jurisdictional facts which were adjudicated by the judgment of the trial court that entered the judgment in the original action.").

### A. CRAWLEY COLLATERALLY ATTACKS THE POOLING ORDER AS LACKING THE "REQUISITE AND JURISDICTIONAL FINDING AND RULING"

Both in its response to the Gastar Motion and in its Motion for summary judgment, Crawley goes to great lengths to assure the Court that it is not engaging in an what would be an admittedly impermissible collateral attack on the Pooling Order. *See* Crawley Response, ECF 40, pp. 16-24 and Crawley Motion, ECF 33, pp. 17-20. Yet by necessity, Crawley's arguments reveal that to be precisely what it is engaged in:

- "The Pooling Order does not set forth the requisite and jurisdictional finding and ruling that there was no agreement among the owners of the oil

and gas rights in Section 8 for the development of the property." [ECF 40, p. 16];

- "However, the requisite and jurisdictional language set out in *Kaneb* and referenced in the Pooling Statute, that the applicant has not reached an agreement with other owners to pool and develop their interests, is simply absent." [*Id.* at pp. 18-19];

- "The requisite language that the applicant and other owners have not agreed to develop does not appear in the quoted Paragraph 4 or in any other part of the Pooling Order." [*Id.* at p. 19];

- "This is a very wide hole in the Pooling Order." [*Id.*]

- "Alternatively, the Pooling Order [] is simply void as to Crawley's JOA rights because it fails to state the jurisdictional and requisite fact that Applicant has not agreed with all of the owners subject to the Pooling Order to pool interests and develop each of the units as a unit." [*Id.* at p. 23]; and

- "The Pooling Order does not meet the jurisdictional requirement of establishing that [there] are no agreements among the owners of oil and gas rights for the development of Section 8." [*Id.* at 24].

Crawley's statements reveal its claims before this Court as precisely what they are – an impermissible collateral attack on the Pooling Order. If Crawley believed the Pooling Order to be lacking the "requisite and jurisdictional language," then the proper remedy would have been an appeal of the decision lodged with the OCC. *See State ex rel. Comm'rs Land Office,* 590 P.2d at 677 and Gastar Motion, ECF 31, pp. 14-17. Instead Crawley asks this Court to rule in its favor on an issue that it could have, and should have, presented to the OCC in the pooling proceedings.

### B. CRAWLEY'S CONTENTION THAT BY OMITTING UNNECESSARY LANGUAGE, THE "POOLING ORDER THEREFORE CONTEMPLATES THE EXISTENCE OF THE 1971 JOA" CONTRADICTS LOGIC, CASE LAW AND THE CONSERVATION STATUTE

This convoluted contention by Crawley is simply not supported by logic, case law or the plain language of the Conservation Statute. To begin, neither *Kaneb Production*

*Company v. GHK Exploration Company,* 1989 OK 11, 769 P.2d 1388, nor *NBI Services., Inc. v. Corporation Commission of State,* 2010 OK CIV APP 86, 241 P.3d 685, hold that the specific language Crawley relies upon is "requisite and jurisdictional" as Crawley contends. Rather, *Kaneb* and *NBI* merely recognize and apply the Conservation Statute's requirement that there be no private agreement covering the working interest owners to be pooled under the specific respective facts of those cases.

Moreover, this Pooling Order contains language that specifically addresses the lack of any applicable private agreement per the jurisdictional requirement. Both Crawley and Gastar were applicants for a forced-pooling order and, as such, confirmed that their interests could be force pooled. *See* Pooling Order, ECF 33-1, Ex. 1G. The lack of a private agreement, such as the 1971 JOA, was a condition precedent for the filing of the pooling applications by both Crawley and Gastar. *See* Gastar Response, ECF 39, p. 7 (quoting the Conservation Statute, 52 Okla. Stat. § 87.1(e)). Specifically, Crawley is included in Gastar's list of owners with whom no such agreement exists in Exhibit A to the Pooling Order. *See* Pooling Order, ECF 33-1, Ex. 1G. Correspondingly, and even more significantly, Gastar is included in Crawley's list of owners with whom no such agreement exists in Exhibit A to the Pooling Order. *See id.*

Paragraph No. 1 of the Pooling Order states that "the rights and equities of all oil and gas owners covered hereby are pooled, adjudicated and determined." *Id.* Paragraph No. 4 in the Findings portion of the Pooling Order states that the "Applicant attempted to reach an agreement with all of the owners named on Exhibit 'A.'" *Id.* By the very language included in the Pooling Order, applicant Crawley and applicant Gastar are, by

definition, not parties to an agreement (such as the 1971 JOA) to develop and produce the common sources for the Horizontal Well. Thus, the Pooling Order does provide that "the applicants [Crawley and Gastar] failed to reach such a development agreement with all such owners," including each other, despite Crawley's assertion otherwise. *See* Crawley Motion, ECF 33, p. 4, ¶ 15.

### C. CRAWLEY'S OMISSION CONCERNING THE 1971 JOA DOES NOT INVALIDATE THE POOLING ORDER

Despite the purported application of the 1971 JOA, and the purportedly necessary exclusion of its interests within the Unit Area of the 1971 JOA, Crawley inexplicably failed to identify the 1971 JOA in its pooling application and apparently failed to notify its OCC lawyer of the existence of the 1971 JOA at all. Crawley Response, ECF 40, p. 20; Second Aff. of Katie Jones, ECF 40-1, ¶ 4. Not only does Crawley's application fail to address the purported application of the 1971 JOA, the transcript of the hearing on the pooling applications contains no reference to, or identification of, the lands/acres supposedly excluded from pooling via the 1971 JOA. *See* Transcript, ECF 40-1, Ex. 1-4.

Hoping to create the appearance of such a reference, Crawley makes an overreaching mischaracterization of the following testimony by Gastar's landman expert witness:

> Q.    Would it be true that if a lateral were drilled across section 8, either north-to-south, south-to-north, that it would drill across at least the lands that were covered by the [1971] JOA?
>
> A.    It'd definitely be covered by the 1971 JOA.

Crawley Motion, ECF 40, p. 21 (quoting Transcript, ECF 40-1, Ex. 1-4, p. 42).

However, the question and answer, particularly viewed in the larger context of the Transcript, literally only acknowledges the undisputed reality that the Horizontal Well will cross through/under (traverse) lands within the Unit Area of the 1971 JOA. *See* Gastar Motion, ECF 31, UMF ¶ 12 ("Because the 640 acre Spacing Order covers all of Section 8, the lands and leasehold interests within Section 8 that are also within the Unit Area of the 1971 JOA will be developed by the Horizontal Well. The Horizontal Well costs and revenues will be attributable to the leasehold interests within the Unit Area of the 1971 JOA along with those leasehold interests within Section 8 outside of the Unit Area of the 1971 JOA." (citing ECF 1-1, Petition ¶¶ 12-18)). It is not an admission of the legal conclusion that the 1971 JOA applies to the Horizontal Well as Crawley suggests. *See* Transcript, ECF 40-1, Ex. 1-4, p. 41 ("Q. When you were expressing your opinions with respect to a JOA issue, were you expressing that in the capacity as an expert in legal matters or land matters, or just your opinion individually? A. An expert I guess in land matters in my opinion, but not as an attorney."). Crawley's after-the-fact arguments about presenting and preserving its claims as to the 1971 JOA throughout the pooling proceedings have as much support as its claim that the resulting Pooling Order lacks "requisite and jurisdictional findings" for forced pooling. Crawley has not identified, and cannot identify, anything in the pooling applications, the hearing thereon or the resulting Pooling Order that presents, much less preserves, the purported application of the 1971 JOA.

**IV.    CRAWLEY'S CITATION OF EXTRINSIC EVIDENCE IS IMPROPER AND IMMATERIAL BECAUSE THE 1971 JOA IS UNAMBIGUOUS**

Crawley and Gastar agree that the language of the 1971 JOA is "plain and unambiguous."  *See* Gastar Motion, ECF 31, pp. 10-12 and Crawley Response, ECF 40 pp. 6-7.[2] Yet, Crawley then proceeds to rely on all manner of improper extrinsic evidence to prove that the 1971 JOA nevertheless applies to the Horizontal Well. *See* Crawley Response, ECF 40, pp. 8-14 and *Heskett v. Heskett,* 1995 OK CIV APP 52, 896 P.2d 1200, 1202 (holding that where the agreement at issue is not ambiguous, extrinsic evidence is improper and should not be considered by the court).

For example, "it is a basic tenet of contract law that custom and practice cannot alter the unambiguous terms of a contract." *Singapore Recycle Ctr. Pte Ltd. v. Kad Int'l Mktg., Inc.,* No. 06-CV-4997 RRM RER, 2009 WL 2424333, at *6 (E.D.N.Y. Aug. 6, 2009). Crawley nevertheless cites what it contends are numerous horizontal wells drilled pursuant to the AAPL's 1956, 1977, 1982 and 1989 joint operating agreement forms. *See* Crawley Response, ECF 40, pp. 8-11. Such purported evidence is improper, but even if it were permissible, Crawley provides no evidence of the actual terms of those JOAs, no evidence about any amendments, supplements or modifications or any support for its suggestion that they are "similar" to the 1971 JOA or proper evidence of industry custom and practice. Even more important here, Crawley omits any demonstration of analogous forced-pooling applications, forced-pooling proceedings or any forced-pooling order with

---

[2] *See Pitco Prod. Co. v. Chaparral Energy, Inc.,* 2003 OK 5, ¶ 14, 63 P.3d 541, 545 ("The mere fact the parties disagree or press for a different construction does not make an agreement ambiguous.").

respect to any other wells or agreements even though all of those in this case are critical to the analysis of Crawley's contentions about this Pooling Order and the 1971 JOA.

Similarly, Crawley attempts to rely on yet more extrinsic evidence concerning other JOAs and well proposals that are additionally impermissible hearsay. *See* Crawley Response, ECF 40, pp. 11-14; *Farley v. Stacy,* No. 14-CV-0008-JHP-PJC, 2015 WL 3866836, at *4 (N.D. Okla. June 23, 2015), *aff'd,* 645 F. App'x 684 (10th Cir. 2016) ("Hearsay evidence is inadmissible evidence that may not be considered for summary judgment purposes."); *In re 3RC Mech. & Contracting Servs., LLC,* 502 B.R. 548, 551 (Bankr. N.D. Ill. 2013) ("statements made by third parties in an otherwise admissible business record cannot properly be admitted for their truth unless they can be shown independently to fall within a recognized hearsay exception.") and *United States v. Payne,* 437 F.3d 540, 547 (6th Cir. 2006) ("In order to admit an out-of-court statement that is nested within another, Rule 805 requires that *both* statements be admissible.") (emphasis original). Even assuming *arguendo* that the evidence relating to other wells, other well proposals, other joint operating agreements, etc., were somehow admissible, the documents Crawley attempts to rely on would not simply be admissible because they are maintained in a file as a "business record" of Crawley, because they contain additional levels of hearsay for which no exception has been demonstrated. Such hearsay evidence could not be considered for purposes of summary judgment even if it were relevant in light of the parties' agreement that the 1971 JOA is unambiguous.

WHEREFORE, for the reasons detailed herein and in Gastar's Motion, ECF No. 31, the Court should enter judgment as a matter of law in Gastar's favor.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2018, I electronically transmitted the foregoing document to the Clerk of the Court for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Charles L. Puckett
Brian R. Matula
**GUM, PUCKETT & MACKECHNIE, LLP**
105 North Hudson, Suite 900
Oklahoma City, OK 73102
Telephone: (405) 488-1212
Facsimile: (405) 488-1216
clpuckett@gpmlegal.net
brmatula@gpmlegal.net
***Attorneys for Plaintiff Crawley Petroleum Corporation***

*/s/ Michael R. Perri*

01282983.DOC