# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CRAWLEY PETROLEUM CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-1365-SLP |
| | ) |
| GASTAR EXPLORATION INC., | ) |
| | ) |
| Defendant. | ) |

## O R D E R

Before the Court are cross-motions. Defendant Gastar Exploration Inc. filed a summary judgment motion [Doc. Nos. 31-32]. It is at issue. *See* Pl.'s Resp., Doc. No. 40; Def.'s Reply, Doc. No. 44. Likewise, Plaintiff Crawley Petroleum Corp. filed a summary judgment motion [Doc. Nos. 33, 35].[1] It also is at issue. *See* Def.'s Resp., Doc. No. 39; Pl.'s Reply, Doc. No. 43.

**I.    Summary judgment standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding if summary judgment is proper, the Court does not weigh the evidence and determine the truth of the matters asserted. *See Birch v. Polaris*

---

[1] Exhibit 1A to Plaintiff's motion is filed at both Document No. 34 and Document No. 35-1. There is no difference between the two filings, and the Court references Document No. 35-1 herein. Both Plaintiff's counsel and Defendant's counsel are cautioned to comply with § II(A)(4)(a) of the Court's ECF Policies and Procedures Manual in future cases: "Exhibits and attachments that are filed electronically shall be submitted as separate attachments to the document and shall be clearly labeled with the appropriate exhibit number . . . . Do not use alphabetical or alpha-numeric designations for exhibits."

*Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## II. Undisputed material facts[2]

Plaintiff and Defendant each own oil and gas leasehold working interests in a certain section of Kingfisher County.  They are also both parties (via their respective predecessors in interest) to a 1971 joint operating agreement (as amended, the "1971 JOA").  *See* Operating Agreement, Doc. No. 35-1.  The 1971 JOA remains in effect, though the parties dispute its scope.  Plaintiff argues that it is applicable to all wells in the relevant area, while Defendant argues that it is applicable to vertical wells in the relevant area but is not applicable to horizontal wells.

In early 2017, both Plaintiff and Defendant sent letters proposing to drill a horizontal well.  Plaintiff's first proposal noted that another letter would be sent if Defendant had an interest subject to an operating agreement.  Plaintiff's second letter indicated its belief that Defendant did, in fact, have an interest subject at least in part to the 1971 JOA, in addition to other interests (per Plaintiff) that primarily were referred to in its second letter.[3]

---

[2] Included herein are those material facts supported by the summary judgment record and, unless indicated herein, not genuinely disputed as required by Federal Rule of Civil Procedure 56(c).  Facts proposed by a party that the Court finds irrelevant to the issues addressed herein are omitted.

[3] Plaintiff's second letter also promised a future proposal subject to the 1971 JOA would be made, but no such proposal (based in the 1971 JOA) was ever made by Plaintiff to Defendant.  Plaintiff asserts that this is because Defendant was named operator of the relevant horizontal well by the OCC in the Pooling Order.  The parties' respective letters

2

Defendant's proposal did not reference the 1971 JOA.  Plaintiff and Defendant's dueling proposals came before the Oklahoma Corporation Commission ("OCC") in forced pooling actions, resulting in the forced pooling of the relevant section with respect to the Mississippian (less Chester) and Woodford common sources of supply underlying the section.  The OCC issued a spacing order and, later, a pooling order; Defendant was named the operator for the single horizontal well to produce from the section.  *See* Order of Comm'n (Pl.'s Ex. 1E), Doc. No. 33-1; Order of Comm'n (Pl.'s Ex. 1G), Doc. No. 33-1. The area subject to the OCC's Spacing Order and its Pooling Order is larger than and fully encompasses the area subject to the 1971 JOA.  Plaintiff elected to participate in the horizontal well with (what it asserted were) its non-1971-JOA-subject working interests and promised to make a separate election with (what it asserted were) its 1971-JOA-subject working interests if Defendant made a 1971-JOA-based proposal to it (which Defendant never did because Defendant's position is that the horizontal well is not subject to the 1971 JOA).  Defendant thereafter drilled the Yogi 1801 8-1UOH horizontal well, completing it in December 2017.

Plaintiff filed this lawsuit in Kingfisher County; it was subsequently removed to this Court.  *See* Pet., Doc. No. 1-1; Notice of Removal, Doc. No. 1.  Plaintiff seeks a declaratory judgment that the 1971 JOA "controls the drilling, completion and operation of the [relevant] Horizontal Well and [that Plaintiff's] leasehold interests subject to the [1971] JOA cannot be force pooled pursuant to the [OCC's] Pooling Order." Pet. ¶ 25, Doc. No.

---

are only relevant to provide context and to show their respective consistent positions that the 1971 JOA was or was not relevant to the then-to-be-drilled horizontal well.

1-1; *see also id.* at pp. 6-7. Plaintiff also asserts a breach of contract claim against Defendant based on violations of the 1971 JOA—whereby Plaintiff requests Defendant be ordered to specifically perform pursuant to the 1971 JOA.

**III.    Discussion and analysis**

The essence of the parties' dispute is which interpretation of the 1971 JOA is correct. Plaintiff relies on the facially broad nature of the contract which includes all wells—including horizontal wells—within its scope. Defendant, on the other hand, points to a common-sense acknowledgement of post-contract technological advances (i.e., the ability to drill horizontally) that the signatories of the contract likely did not specifically foresee when executing it. In this case, Plaintiff has the better legal argument.

The 1971 JOA consistently refers to and is effective as to a "well" or "wells," without further modifiers. *See, e.g.*, Operating Agreement § 10, Doc. No. 35-1 ("[I]n the event . . . no other well is producing oil or gas in paying quantities from the Unit Area, then . . . this agreement shall terminate unless one or more of the parties are then engaged in drilling a well or wells pursuant to Section 12 hereof, or all parties have agreed to drill an additional well or wells under this agreement, in which event this agreement shall continue in force until such well or wells shall have been drilled and completed."); *id.* § 11(a) ("No well shall be drilled on the Unit Area except any well expressly provided for in this agreement and except any well drilled pursuant to the provisions of Section 12 of this agreement . . . ."); *id.* § 11(c) ("Operator shall not undertake any single project reasonably estimated to require an expenditure in excess of [$5,000] except in connection with a well . . . ."); *id.* § 12 ("If all the parties cannot mutually agree upon the drilling of any well

4

on the Unit Area . . . , any party or parties wishing to drill, rework, deepen or plug back such a well . . . ."); *id.* ("Within sixty . . . days after the completion of any operation under this section, the party conducting the operations for the Consenting Parties shall furnish each Non-Consenting Party with an inventory of the equipment in and connected to the well, and an itemized statement of the cost of drilling, deepening, plugging back, testing, completing, and equipping the well for production . . . ."); *id.* § 15 ("All wells drilled on the Unit Area shall be drilled on a competitive contract basis at the usual rates prevailing in the area. Operator, if it so desires, may employ its own tools and equipment in the drilling of wells . . . ."); *id.* § 16 ("No well . . . which has been completed as a producer shall be plugged and abandoned without the consent of all parties; however, if all parties do not agree to the abandonment of any well, those wishing to continue its operation shall tender to each of the other parties its proportionate share of the value of the well's salvable material and equipment . . . ."). Nothing in the 1971 JOA indicates an intent to limit the types of wells included within the contract's scope. Therefore, the Court finds that "wells" within the 1971 JOA includes both vertical and horizontal wells. This construction is similar to that applied by the only other court which appears to have considered a similar question based on the parties' cited authorities and the Court's independent research. *See Springer Ranch, Ltd. v. Jones*, 421 S.W. 3d 273, 286-87 (Tex. App. 2013) (construing a 1993 contract between neighboring property owners to include both vertical and horizontal wells within the scope of the contract when doing so did not require the court to alter the meaning of "well").

The Court's conclusion flows from applicable rules of contract interpretation found in Oklahoma law. Principally, "the paramount objective of contract interpretation is to ascertain and give effect to the intention of the parties," which "must be discerned from the language of the contract if the language is clear and explicit and does not involve an absurdity."[4] *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1015 (10th Cir. 2018) (quotation marks omitted) (quoting Okla. Stat. tit. 15, § 154). And "courts may not read words or terms into the contract that it does not contain." *Id.* Nothing in the 1971 JOA indicates that the parties intended to limit its scope to wells drilled with then-existing technological capabilities, and the Court will not read a "vertical" modifier into the contract to precede each use of "well" or "wells." As stated by the Oklahoma Supreme Court, "[e]ven though the result may be harsh, a party will be bound by the unambiguous terms of a contract." *Cook v. Okla. Bd. of Pub. Affairs*, 736 P.2d 140, 147 (Okla. 1987). Such is the case here. Defendant points to Okla. Stat. tit. 15, § 164: "However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract." Here, the 1971 JOA reveals the parties' intention to include oil and gas wells of all kinds within the contract's scope. Where § 164's directive might

---

[4] The Court has not considered or relied on Plaintiff's contention that "[o]ther well operators recognize existing joint operating agreements when proposing the drilling of wells and when conducting operations on wells." Pl.'s Mot. 11, Doc. No. 33. Defendant objected to consideration of such evidence. *See* Def.'s Resp. 14-15, Doc. No. 39; Def.'s Reply 9-10, Doc. No. 44. The Court does not find this evidence necessary for it to make its decision herein. Likewise, the Court has not relied on Plaintiff's "summary of a large number of older JOA[]s in its files that do not reference horizontal wells but are used to operate horizontal wells" (Def.'s Resp. 9, Doc. No. 39) and similar arguments made by Plaintiff. *See* Pl.'s Resp. 8-9, 11-14, Doc. No. 40.

come into play is not regarding a horizontal well, but instead with, e.g., a drinking water well.  The Court does not find that § 164 compels a different result than that reached herein.

Because the Court finds that the 1971 JOA includes both vertical and horizontal wells within its scope, Plaintiff's interests subject to the 1971 JOA are necessarily outside the scope of the OCC's Pooling Order.  *See* Okla. Stat. tit. 52, § 87.1(e) ("When two or more separately owned tracts of land are embraced within an established spacing unit, or where there are undivided interests separately owned, or both such separately owned tracts and undivided interests embraced within such established spacing unit, the owners thereof may validly pool their interests and develop their lands as a unit.  Where, however, such owners have not agreed to pool their interests and where one such separate owner has drilled or proposes to drill a well on the unit to the common source of supply, the Commission, to avoid the drilling of unnecessary wells, or to protect correlative rights, shall, upon a proper application therefor and a hearing thereon, require such owners to pool and develop their lands in the spacing unit as a unit."); *Marathon Oil Co. v. Corp. Comm'n*, 651 P.2d 1051, 1054 (Okla. 1982) ("As [§ 87.1(e)] reads, it is clearly not contemplated that all owners of a right to drill must be joined in a pooling action.  [That subsection] states the pooling action may be brought against those owners who have not agreed to develop as a unit. . . .  [Section 87.1(e)] confirms the [OCC]'s authority to pool, by administrative order, interests which were not voluntarily pooled.  The authority to require pooling follows immediately upon language recognizing the validity of voluntary pooling agreements, and cannot be taken as a requirement that all owners must be pooled by order.").  The Court's determination herein does not affect any interests not subject to the 1971 JOA, and there is

no indication in the Pooling Order that it included interests subject to the 1971 JOA. Rather, the OCC's Pooling Order indicates that such interests are excluded from its scope.[5] *See* Order of Comm'n (Pl.'s Ex. 1G), at GASTAR-138, Doc. No. 33-1 ("Any owner of the right to drill in said drilling and spacing unit *who has not agreed with Operator to develop said unit and common sources of supply* shall be afforded the following election as to all or any portion of said owner's interest . . . ." (emphasis added)); *id.* at GASTAR-139 ("Each owner of the right to drill in said drilling and spacing unit to said common sources of supply covered hereby *who has not agreed to develop said unit as a unit* . . . ." (emphasis added)).

The Court's decision herein does not affect any of the findings made or conclusions reached by the OCC. *See Fransen v. Conoco, Inc.*, 64 F.3d 1481, 1489-90 (10th Cir. 1995) ("If a claim does not challenge the OCC's findings or conclusions, it is not barred as a collateral attack on an OCC order."). Accordingly, this case does not constitute a prohibited collateral attack on the OCC's order. *See* Okla. Stat. tit. 52, § 111; *Fransen*, 64 F.3d at 1487 (explaining, in the context of § 111, that a collateral attack exists when a plaintiff's claims would "avoid, defeat, evade, or deny the force and effect . . . . of the OCC's order" (quotation marks and citation omitted)); *Kaneb Prod. Co. v. GHK Expl. Co.*,

---

[5] Defendant relies on its expert witness's report to argue that "[t]he Pooling Order . . . required [Plaintiff's] participation thereunder to include all of its working interests in Section 8." Def.'s Mot. 16, Doc. No. 31; *see also id.* at 17 n.9; Def.'s Resp. 11, Doc. No. 39. But the Pooling Order, for the reasons indicated herein, does not support such a conclusion. *See, e.g.*, Order of Comm'n (Pl.'s Ex. 1G), at GASTAR-138, Doc. No. 33-1 ("Any owner of the right to drill in said drilling and spacing unit who has not agreed with Operator to develop said unit and common sources of supply shall be afforded the following election *as to all or any portion of said owner's interest* . . . ." (emphasis added)).

8

769 P.2d 1388, 1391-92 (Okla. 1989); *cf. Cory v. Newfield Expl. Mid-Continent, Inc.*, No. CIV-19-221-G, 2020 WL 981718, at *3 (W.D. Okla. Feb. 28, 2020) (finding no collateral attack when a plaintiff did "not [seek] to reverse, modify, or correct any OCC order but to enforce a private contractual right" found in a lease). The same result, based on somewhat similar arguments (albeit in different factual and procedural contexts), was previously reached by the Oklahoma Court of Civil Appeals as well:

> [Defendant's] underlying argument—that it should not be subject to the [OCC]'s force pooling order and the [OCC] is without jurisdiction to force pool [Defendant] because a private agreement, the JOA, controls—is not a dispute over rights and equities of interest owners within a drilling and spacing unit which actually affects correlative rights within a common source of supply and thus affects the public interest in the protection of production from that source as a whole, but a private dispute over the application and interpretation of a contract. . . . Interpretation of the applicability of the JOA would be beyond the [OCC]'s conferred jurisdiction because it concerns a dispute between private parties in which the public interest in correlative rights is not concerned.

*Chesapeake Operating, Inc. v. Burlington Res. Oil & Gas Co.*, 2002 OK CIV APP 125, ¶ 25, 60 P.3d 1052, 1057 (quotation marks and citation omitted) (released for publication by order of the Court of Civil Appeals).

Defendant points to the following portion of the Pooling Order to argue that the OCC "undisputedly and unequivocally" determined that "[Plaintiff] and [Defendant] as owners [had not] reached an agreement such as the 1971 JOA" (Def.'s Resp. 5-6, Doc. No. 39):

> Applicants are the owners of the right to drill wells on said drilling and spacing unit and to develop and produce said common sources of supply, [and they] have made a bona fide effort to reach an agreement with all of the other such owners in such drilling and spacing unit, as set forth on Exhibit "A", to pool their interests and to develop the drilling and spacing unit and

9

> common sources of supply as a unit, and the Commission should issue an order requiring such owners to pool and develop the drilling and spacing unit and common sources of supply covered hereby as a unit.

Order of Comm'n (Pl.'s Ex. 1G), at GASTAR-136, Doc. No. 33-1.  But the Pooling Order cannot support the argument that Defendant makes.  All that the Pooling Order indicates is that Plaintiff and Defendant have each *attempted* to reach agreements with *all* of the other owners.  The indicated section does not, as Defendant argues, indicate that *no* agreement was reached by Plaintiff or Defendant with *any* of the other owners (including, e.g., as between Plaintiff and Defendant).  The Court agrees with Plaintiff's argument that a different situation might be presented if this section was followed by the language included in some pooling orders: "*Applicant has not agreed* with all [or any] of the other such owners in such drilling and spacing unit to pool their interests and to develop the drilling and spacing unit and common source of supply as a single unit."  *NBI Servs., Inc. v. Corp. Comm'n*, 2010 OK CIV APP 86, 241 P.3d 685, 690 n.18 (emphasis added) (quotation marks omitted) (released for publication by order of the Court of Civil Appeals); *see also Kaneb Prod. Co.*, 769 P.2d at 1390 (referencing part of a pooling order that stated the "Applicant has not agreed with all of the owners subject hereto to pool interests and to develop each of the units as a unit").  But such language is not included in the Pooling Order relevant to this case.

Moreover, Defendant's argument regarding the indicated Pooling Order statement does not account for the fact that Plaintiff owns interests both inside and outside of the 1971 JOA's area, all of which were included within the larger area to which the Pooling

10

Order applies. *See* Pl.'s Reply 4-5, Doc. No. 43.[6] Under such circumstances, it is logical for Plaintiff to be listed on "Exhibit A" to the Pooling Order—as to Plaintiff's non-1971-JOA-covered interests. The same is true as to Defendant. *See supra* note 6.

For this same reason (i.e., Plaintiff's ownership of interests both inside and outside the 1971 JOA's area, but all within the Pooling Order's area), this case is different than *NBI Services*, in which an Oklahoma appellate court held that the OCC was to consider a joint operating agreement and what effect it had on a pooling order previously issued by the OCC because the plaintiff therein asserted that "100% of the interest in the Spacing Unit was subject to the [arguably applicable] JOA" and this issue was determinative of the OCC's jurisdiction to enter any pooling order at all. 2010 OK CIV APP 86, ¶¶ 13, 18, 21, 241 P.3d at 689-91; *see also id.* ¶ 13, 241 P.3d at 689 (further explaining the plaintiff's position to be that a defendant was "attempting to force pool a Unit where all the interest owners are subject to a JOA"). There, if the joint operating agreement applied, the pooling order was void because the OCC lacked jurisdiction to enter it. Here, in contrast, the validity of the 1971 JOA does not void the Pooling Order as to non-1971-JOA covered interests (which are the only interests within the scope of the Pooling Order to begin with) for the reasons stated herein.[7]

---

[6] Defendant says its interests are only within the 1971 JOA's area. But it does so without including any supporting evidence for its assertion. *See* Def.'s Resp. 6 n.2, Doc. No. 39. The only uncontroverted evidence on this issue before the Court is that provided by Plaintiff—indicating that Defendant owns interests both within and outside the area covered by the 1971 JOA. *See* Jones Aff. ¶ 4, Doc. No. 40-1.

[7] The Court does not reach any decision regarding interests of third parties who may have some relationship to the Pooling Order and/or the 1971 JOA who are not before the Court.

### IV. Conclusion

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc. No. 31] is DENIED for the reasons stated herein.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment [Doc. No. 33] is GRANTED for the reasons set forth herein.

IT IS FURTHER ORDERED that Plaintiff shall submit to the Court (via CM/ECF filing) a Notice with a proposed judgment as an exhibit thereto within fourteen days of this Order. Plaintiff shall also submit the proposed judgment via email. *See* ECF Policies & Procedures Manual § II(G)(2)(b). Defendant may respond (via CM/ECF filing) with any objections regarding the *form* of Plaintiff's proposed judgment (e.g., if something in Plaintiff's submission is inconsistent with the Court's decisions reached herein) within fourteen days of Plaintiff's submission.

IT IS SO ORDERED this 19th day of May, 2020.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE